UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>JOSEPH MICHAEL QUINCY JEFFERSON,<br><br>Defendant. | CASE NO. 2:23-cr-00109-LK<br><br>ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR PARTIAL RECONSIDERATION |

This matter comes before the Court on the November 8, 2024 letter from the Federal Public Defender regarding the Court's October 7, 2024 order. Dkt. No. 145. The letter contends that the Court erred in denying Jefferson's motion to dismiss based on his violations of Local Criminal Rule 12 and the Court's orders, and in striking new arguments in his supplemental reply brief. *Id.* at 1–2. The Court therefore construes the letter as a motion for partial reconsideration. Although the motion is procedurally improper, the Court grants the motion in part insofar as it has fully reconsidered its decision, but upon such reconsideration, the Court reaches the same result. *Pena-Ruiz v. Solorzano*, 281 F. App'x 110, 111 n.1 (3d Cir. 2008) (reconsideration is "granted" when the court "thoroughly reconsider[s] its previous ruling," even if it reaches the same outcome).

# I. DISCUSSION

## A. Legal Standard

"Motions for reconsideration are disfavored," and the Court "will ordinarily deny such motions in the absence of a showing of manifest error in the prior ruling or a showing of new facts or legal authority which could not have been brought to its attention earlier with reasonable diligence." LCrR 12(b)(13)(A). A movant who seeks reconsideration "shall point out with specificity the matters which the movant believes were overlooked or misapprehended by the court, any new matters being brought to the court's attention for the first time, and the particular modifications being sought in the court's prior ruling." LCrR 12(b)(13)(B).

## B. Jefferson Fails to Demonstrate Error in the Prior Ruling

Jefferson contends that the Court erred in determining that his various violations of Local Criminal Rule 12 should be deemed an admission that the motion to dismiss was without merit and were sufficiently serious to justify a summary denial of the motion, and that the Court should not have stricken arguments raised for the first time in his supplemental reply. Dkt. No. 145 at 1–2. He further suggests that the types of concerns reflected in the October 7 order should first be privately brought to the attention of the Federal Public Defender. *Id.* at 3.

### 1. The Court May Not Engage in Ex Parte Communication

The Court first addresses Jefferson's suggestion that the Court discuss its concerns with the Federal Public Defender before including them in an order. *Id.*

Unless authorized by law, "a judge should not initiate, permit, or consider *ex parte* communications or consider other communications concerning a pending or impending matter that are made outside the presence of the parties or their lawyers." Code of Conduct for United States Judges, Canon 3(A)(4). Similarly, a lawyer shall not "communicate ex parte with [a judge] during the proceeding unless authorized to do so by law or court order." Wash. R. Prof. Conduct 3.5(b).

No law authorized the Court to meet with the office representing Jefferson to discuss this matter during the pendency of this case, even if such meeting pertained only the conduct of defense counsel. Commenting on an attorney's performance in a pending matter runs the risk of discussing the facts, merits, or status of the matter, and given the risk that such discussion may interfere with a fair trial or hearing, any feedback about performance to attorneys or their supervisors should not involve proceedings still pending before the judge. *See* Geyh et al., 1 Judicial Conduct and Ethics §§ 5.03[2], 9.06[5] (2023); *In re Complaints Against Dist. Judge Colin S. Bruce*, Nos. 07-18-90053, 07-18-90067, at 9 (7th Cir. Jud. Council May 14, 2019) ("*In re Bruce*"); *cf.* Guide to Judiciary Policy, Vol. 2B, Ch. 2, Committee on Codes of Conduct Advisory Opinion No. 112 at 229 (any "comment or exchange between an attorney and the judge," including statements "about the competence of a particular law firm or attorney," must be "scrutinized so as not to constitute ex parte communication"). Furthermore, "[r]egardless of how well-intentioned the [*ex parte* communications] may be," such communications "[b]y their very one-sided nature . . . raise questions about motivations and impartiality which can never be resolved to everyone's satisfaction." *Matter of Kaufman*, 416 S.E.2d 480, 485 (W. Va. 1992). Thus, *ex parte* communications "are not only inconsistent with our adversarial process, but also risk advantaging one party and creating an appearance of impropriety and unfairness." *In re Bruce*, at 8.

Although the Court considers Jefferson's position to be well-intentioned, and the Court shares the goals of mutual respect and collegiality among the Court, the Federal Public Defender, and the United States Attorney's Office, applicable law prohibits it from privately bringing its concerns to the Federal Public Defender during the pendency of a matter.

2. <u>The Court did not Err in Ruling that Jefferson's Repeated Violations of Court Orders and Local Criminal Rule 12 Constituted an Admission that His Motion Did not have Merit Under Local Criminal Rule 12(b)(4) and Warranted Summary Dismissal, and did not Err in Striking New Arguments from his Supplemental Reply</u>

Although Jefferson characterizes the October 7 order as bearing upon counsel's ethical responsibilities, Dkt. No. 145 at 1–2, the order makes no mention of ethical duties or any rule of professional conduct. Indeed, the standards of conduct included in Rule 62.3(a) are not limited to compliance with the Washington Rules of Professional Conduct, LCrR 62.3(a)(2); the Rule also requires counsel to abide by "[t]he local rules of this district." LCrR 62.3(a)(1). It was the violations of Local Criminal Rule 12 and the Court's orders that were the focus of the October 7 order. Dkt. No. 105 at 3.

The Court takes matters involving the conduct of parties before it very seriously. As detailed below, it was only after Jefferson repeatedly violated Court orders and the Local Criminal Rules—despite a warning from the Court that sanctions may result—that the Court determined that an order was warranted requiring counsel to engage in constructive discussion of their obligations under Rule 62.3(a) to comply with the Local Criminal Rules and how they might avoid violating those Rules and the Court's orders in the future. *Id.* at 7–8. Since that order was issued, it is clear that counsel have made a concerted effort to comply with the Local Criminal Rules. However, because it appears from Jefferson's motion for reconsideration that the Court's prior order did not adequately explain its decision, the Court does so here.

Under Local Criminal Rule 12(b)(4), "[i]f a party fails to file the papers required by this rule, . . . such failure may be deemed by the court to be an admission that the motion . . . is without merit." In its October 7 order, the Court held that "Jefferson's failures to comply with Local Criminal Rule 12 [were] an admission that his motion is without merit" under Rule 12(b)(4), and that "Jefferson's numerous and repeated violations of Local Criminal Rule 12 and this Court's

orders in connection with his motion to dismiss and supplemental briefing [we]re sufficiently serious to justify a summary denial of the motion." Dkt. No. 105 at 3.

Jefferson argues that Rule 12(b)(1) is "awkwardly worded," and that "[t]he general practice in this district has not been to file exhibits supporting every fact alleged in a pleading, especially where, as here, the material facts are not disputed." Dkt. No. 145 at 1. Although Jefferson concedes that he "did not adequately segregate and identify some exhibits," and that counsel failed to explain how Jefferson's motion to dismiss relied on six documents that had not yet been produced at the time he submitted the motion, he argues that these and other "filing errors" could not "reasonably be construed as 'an admission that [the motion to dismiss] [wa]s without merit,'" and were not "'sufficiently serious to justify a summary denial of the motion.'" *Id.* at 1–2 (quoting Dkt. No. 105 at 3). The record demonstrates otherwise.

### (a) *Jefferson's Motion to Dismiss Violates Local Criminal Rule 12(b)(1)*

On August 19, 2024, Jefferson filed a six-page motion to dismiss the indictment on due process grounds. Dkt. No. 56. In violation of Local Criminal Rule 12(b)(1), which requires that "[i]f [a] motion requires the consideration of facts not appearing of record, the movant shall . . . file copies of all affidavits and photographic or documentary evidence presented in support of the motion," Jefferson made several assertions of fact without providing supporting citations, declarations, or exhibits. Dkt. No. 70 at 4. These included, but were not limited to, the following factual assertions:

- "[L]aw enforcement learned that Jane Doe escalated a verbal argument when she confronted Mr. Jefferson with a knife." Dkt. No. 56 at 2.

- "[L]aw enforcement learned that Jane Doe allegedly scratched Mr. Jefferson." *Id.*

- "Officer Granger . . . viewed and photographed Jane Doe's hands and fingernails, which showed nothing out of the ordinary[.]" *Id.*

- "[T]he government's own expert . . . concluded she 'did not see any ligature marks on [Jane

Doe's] neck nor petechiae in the eyes' after she reviewed photos taken by a forensic nurse on April 8, 2023." *Id.* at 3.

- "[L]aw enforcement obtained a warrant to enter the home[.]" *Id.*

The Government's response brief similarly contained numerous statements of fact that were not supported by citations, declarations, or exhibits. Dkt. No. 70 at 4.

> *(b) Jefferson's Reply Brief on the Motion to Dismiss Violates Local Criminal Rule 12(b)(1) and the Prohibition of New Arguments in Reply Briefs*

On September 3, 2024, Jefferson filed a reply brief. Dkt. No. 67. In that brief, Jefferson again violated Rule 12(b)(1) by failing to provide supporting citations, declarations, or exhibits in support of at least the following factual assertions:

- "To compound matters, it appears that law enforcement successfully hid from the government that Doe brandished a knife that night by sanitizing their reports and affidavits in a search warrant and complaint." *Id.* at 2; *see also id.* at 4 ("Granger's written report and sworn declaration contained in the application for a search warrant failed to disclose that Doe escalated the situation by using a bread knife against Jefferson."); *id.* at 5 (law enforcement "fail[ed] to report to multiple judges that Doe had blood on her hand and possessed a knife").

- "Law enforcement obtained a warrant to search the home[.]" *Id.* at 6.

- "While Jefferson was arrested and in the presence of four police officers, including Officer Granger, the officers discussed the need to locate and document the scratch. During a conversation between the four officers, immediately after the arrest and while at the location of the April 8 incident, one officer tells the other three officers that Doe scratched Jefferson behind the ear and they should 'find that.' This conversation was documented in police body camera footage." *Id.* at 7.[1]

In addition, for the first time in Jefferson's reply brief, he requested an evidentiary hearing and an unspecified alternative remedy. *Id.* at 1 ("The Indictment should be dismissed or the Court should hold an evidentiary hearing to determine the scope of law enforcement's bad faith[.]"); *id.* at 2 ("After such a hearing, the Court will be able to determine if dismissal or some other just

---

[1] Although Jefferson submitted body camera footage in some exhibits attached to his motion, he did not cite any exhibits or other evidence to support the factual assertions in this quote.

remedy is appropriate."). "[T]he general rule is that [litigants] cannot raise a new issue for the first time in their reply briefs." *United States v. Birtle*, 792 F.2d 846, 848 (9th Cir. 1986) (quoting *Thompson v. Commissioner*, 631 F.2d 642, 649 (9th Cir. 1980)). "The unfairness of such a tactic is obvious. Opposing counsel is denied the opportunity to point to the record to show that the new theory lacks legal or factual support." *Sophanthavong v. Palmateer*, 378 F.3d 859, 872 (9th Cir. 2004).

### (c) The Court Explains the Deficiencies in the Parties' Briefing and Provides Them an Opportunity to Correct the Deficiencies

On September 9, 2024, the Court issued its first order on the motion to dismiss, which largely deferred ruling on the motion based on the above-described issues with the parties' briefing. Dkt. No. 70. The Court explained that "Local Criminal Rules 12(b)(1) and (2) require parties to 'file copies of all affidavits and photographic or documentary evidence presented in support of' the motion or opposition when 'consideration of facts not appearing of record' is required." *Id.* at 4 (citing *Cohen v. United States*, 378 F.2d 751, 761 & n.21 (9th Cir. 1967) ("[A] motion 'may be supported by affidavit,' . . . and it has been held that the court has inherent power to require[] that supporting affidavits be filed." (citing prior W.D. Wash. Local Criminal Rule 9)).[2]

The Court specifically noted that "Jefferson did not produce any exhibits until his reply brief," and "[e]ven then, the reply brief lack[ed] citations to certain of those exhibits"; for example, the reply brief "ma[de] various assertions regarding law enforcement conversations on the day of the incident without citing to any supporting evidence." *Id.* at 4 (citing Dkt. No. 67 at 7). The Court cautioned that "[i]t is not the Court's job to locate the relevant exhibits for Jefferson." *Id.* (citing *United States v. Renzi*, 651 F.3d 1012, 1030 (9th Cir. 2011) (it is incumbent on the defendant "to

---

[2] Local Criminal Rule 12(b)(3) requires the same of reply briefs: "The moving party may . . . file . . . a reply brief in support of the motion, together with any supporting material." LCrR 12(b)(3); *see also* Dkt. No. 105 at 3 (citing same).

bring to our attention those specific exhibits that cause him concern")). The Court further noted that:

> at least one of the exhibits attached to the reply brief contradicts Jefferson's earlier characterization of the evidence in his motion. *Compare* Dkt. No. 68 at 2 (picture taken by Officer Granger showing a sizeable bruise on Jane Doe's left hand and an injury or mark of some sort on her ring finger), *with* Dkt. No. 56 at 2 (arguing that Officer Granger's photos of Jane Doe's hands and fingernails "showed nothing out of the ordinary").

*Id.* at 4–5. These issues underscored the need for evidentiary support as required by Rule 12. *Id.*

The order also observed that Jefferson had relegated many arguments to his reply brief that could have—and should have—been raised in his motion, thereby depriving the Government of an opportunity to respond. *Id.* at 4 n.3, 10, 11.

Because "both parties rel[ied] on evidence that [wa]s not in the record to support their positions without providing accompanying declarations or exhibits" in violation of Rule 12(b), and because Jefferson had advanced new arguments in his reply brief, thereby depriving the Court of the ability to "meaningfully evaluate Jefferson's bad faith argument and the Government's response to the same," the Court directed the parties to submit supplemental briefing. Dkt. No. 70 at 4–5, 10–13; *see also* Dkt. No. 105 at 2 ("To avoid penalizing Jefferson for his counsel's mistakes, and to avoid prejudice to the Government from Jefferson's new arguments, the Court ordered supplemental submissions[.]"). The Court specifically ordered as follows:

- Jefferson must first submit a supplemental brief of no more than 2,100 words (1) providing (without any accompanying argument) any documents not currently in the record that he relied on in his briefing to show bad faith; and (2) identifying with greater specificity what "remedial measures" he requests in the event the Court denies his motion to dismiss;

- The Government must then submit a supplemental brief of no more than 4,200 words (1) addressing Jefferson's new arguments from his reply brief (a) regarding Officer Galt's report; and (b) that law enforcement "successfully hid from the government that Doe brandished a knife that night by sanitizing their reports and affidavits in a search warrant and complaint," Dkt. No. 67 at 2; and (2) responding to Jefferson's supplemental briefing regarding remedial

measures. The Government should also provide (without any accompanying argument) any documents not currently in the record that the Government relied on in its briefing to rebut bad faith;

- Jefferson may then respond in no more than 2,100 words to the Government's brief on the issues of (1) Officer Galt's report, and (2) remedial measures.

Dkt. No. 70 at 13.

To the extent that Rule 12(b)(1) is "awkwardly worded," and to the extent the "general practice in this district has not been to file exhibits supporting every fact alleged in a pleading [sic]," as Jefferson contends in his motion, Dkt. No. 145 at 1, the Court's September 9 order explained the Court's expectations and Rule 12(b)(1)–(3)'s requirements and provided Jefferson an opportunity to correct the deficiencies in his briefing.

     *(d) Jefferson's Supplemental Exhibit Submission Violates Rule 12(e)(8) and the Court's Order*

Jefferson submitted 24 exhibits spanning over 600 pages in his supplemental exhibit submission. Dkt. Nos. 77, 78, 78-1, 78-2, 79; *see also* Dkt. No. 75 at 2–4.

Rule 12(e)(8) requires that "[a]ll exhibits submitted in support of or opposition to a motion must be clearly marked with divider pages." *See also* Fed. R. Evid. 901. As Jefferson acknowledges in his motion, Dkt. No. 145 at 1, he violated this rule by consolidating 19 exhibits into a single "Exhibit 1" without cover sheets or stamps delineating those separate exhibits. Dkt. No. 79. Rule 12(e)(8) also requires that

> [a]ll exhibits must be marked to designate testimony or evidence referred to in the parties' filings. Acceptable forms of markings include highlighting, bracketing, underlining or similar methods of designations but must be clear and maintain the legibility of the text. Filing parties shall submit only those excerpts of the referenced exhibits that are directly germane to the matter under consideration, or necessary to provide relevant context. Excerpted material must be clearly and prominently identified as such.

Jefferson did not mark the portions of the exhibits he relied on, nor did he make any effort to indicate where in his briefing he relied on a particular exhibit. Dkt. No. 75 at 2–4.

Jefferson's submission also violated the Court's September 9 order. Although he submitted his reply brief on the motion to dismiss on September 3, 2024, Dkt. No. 67, his supplemental exhibit submission included documents that he did not receive until after that date, Dkt. No. 75 at 4. "It was therefore apparent that Jefferson had violated the Court's order by submitting documents he had not relied upon in his briefing." Dkt. No. 105 at 5.

*(e)  The Court Provides Jefferson Another Opportunity to Correct His Errors*

The Court accordingly issued the following minute order on September 16, 2024, explaining the problem and providing Jefferson another opportunity to comply with the September 9 order:

> The Court is in receipt of Mr. Jefferson's [Dkt. No.] 75 supplemental briefing listing 24 exhibits "to supplement the Motion to Dismiss." Dkt. No. 75 at 2-4. The Court's order permitted Jefferson to provide only those "documents not currently in the record that he relied on in his briefing." Dkt. No. 70 at 13. The Court accordingly ORDERS Jefferson's counsel to submit by no later than September 18, 2024, a declaration compliant with 28 U.S.C. § 1746 identifying, for each of the 24 exhibits submitted, the specific page number(s) and line number(s) in his motion or reply brief, Dkt. Nos. 56, 67, where Jefferson relied on the exhibit. The declaration must also identify any exhibit upon which Jefferson did not rely in his briefing. The Court further notes that Jefferson's submission of the 24 documents grouped into six "exhibits" violates Rule 12(e)(8), which requires that "[a]ll exhibits submitted in support of or opposition to a motion must be clearly marked with divider pages." *See also* Fed. R. Evid. 901. Jefferson's submission also violates Rule 12(e)(8) because it fails to mark the exhibits "to designate testimony or evidence referred to in [his] filings." Because Jefferson has already been given an opportunity to rectify his failure to submit exhibits in compliance with Rule 12, Jefferson will not be permitted to correct these additional failures, and **the Court reserves its right to determine that his motion is without merit under Rule 12(b)(4)**.

Dkt. No. 80 (bold emphasis added). The Court cautioned that "any misrepresentations to the Court or further violations of the Local Criminal Rules may result in sanctions." *Id.*[3]

---

[3] Jefferson takes issue with this warning, Dkt. No. 145 at 3, but it came on the heels of a violation of the Court's September 9 order and repeated violations of Rule 12. "[V]iolations of the Local Rules, the Federal Rules of Criminal Procedure, or other applicable statutes and rules" may result in sanctions. LCrR 62.3(c)(2); *see also* LCrR 62.3(c)(3), 62.5(b). Consistent with applicable precedent, the Court's caution provided notice to counsel of possible consequences for continued violations of the Local Criminal Rules or misrepresentations to the Court. *See In re DeVille*, 361 F.3d 539, 548 (9th Cir. 2004).

(f)  *Counsel's Declaration Violates the Court's September 9 and September 16 Orders*

Despite the clarification in the Court's September 16 order that its prior order allowed Jefferson to submit only those "documents not currently in the record <u>that he relied on in his briefing</u>," one of Jefferson's attorneys submitted a declaration attesting under penalty of perjury that:

- In Jefferson's **August 19, 2024** motion to dismiss, Dkt. No. 56, he relied on numerous documents that the Government first produced to him **after August 19, 2024**. Dkt. No. 81 at 3–6 (citing (1) Ex. 1 at 1–5 (exhibit 1), produced on **August 26, 2024**; (2) Ex. 1 at 30–38 (exhibit 4), produced on **August 30, 2024**; (3) Ex. 1 at 38–40 (exhibit 5), produced on **August 30, 2024**; (4) Ex. 1 at 41–43 (exhibit 6), produced on **August 30, 2024**; (5) Ex. 1 at 96–120 (exhibit 8), produced on **August 23, 2024**; (6) Ex. 1 at 302 (exhibit 17), produced on **August 23, 2024**; (7) Ex. 4 at 1–110 (exhibit 22), produced on **September 12, 2024**; (8) Ex. 5 (exhibit 23), produced on **September 12, 2024**; (9) Ex. 6 at 1–164 (exhibit 24), produced on **September 13, 2024**).

- In Jefferson's **September 3, 2024** reply brief, Dkt. No. 67, he relied on numerous documents that the Government first produced to him **after September 3, 2024**. Dkt. No. 81 at 6 (citing (1) Ex. 4 at 1–110 (exhibit 22), produced on **September 12, 2024**; (2) Ex. 5 (exhibit 23), produced on **September 12, 2024**; (3) Ex. 6 at 1–164 (exhibit 24), produced on **September 13, 2024**).

For exhibits 22 through 24, the attorney stated in footnotes that "[a]lthough this discovery was received subsequent to the relevant filings, undersigned counsel's review of the discovery already received, counsel's experience as a criminal defense lawyer, and common sense provided a basis to rely on this document." Dkt. No. 81 at 6 nn.5–7. No explanation was provided for exhibits 1, 4, 5, 6, 8, or 17.

As the Court stated in its October 7 order, counsel's declaration "defie[d] logic, the Court's order, and other applicable law." Dkt. No. 105 at 6. Jefferson now seeks to excuse these problems, arguing that "it was reasonable for the attorneys to err on the side of being overinclusive[.]" Dkt. No. 145 at 2 (citing Dkt. No. 105 at 3). This argument is wrong for several reasons. First, counsel was completely without license to "err on the side of being overinclusive." Not only did the Court's

September 9 order permit the parties only to submit documents they had relied upon at the time they submitted their briefs, the Court reiterated the limits of what the parties were allowed to submit in its September 16 order, and it specifically cautioned the defense that the Court "reserve[d] its right to determine that [Jefferson's] motion is without merit under Rule 12(b)(4)" and that "any misrepresentations to the Court or further violations of the Local Criminal Rules may result in sanctions." Dkt. No. 80. The footnotes in counsel's declaration, Dkt. No. 81 at 6 nn.5–7, demonstrate that he understood the parameters of the Court's order but chose to attempt to circumvent it by introducing new evidence through footnotes rather than a procedurally appropriate mechanism such as a motion for leave.

Second, "err[ing] on the side of being overinclusive" impermissibly placed newly produced documents before the Court to which the Government had no opportunity to respond.[4] As the Court explained in its October 7 order, and explains again today, such a tactic is not allowed:

> A basic and well-established rule is that parties are not permitted to introduce new arguments or evidence without providing the opposing party an opportunity to respond. *United States v. Sanders*, 992 F.3d 583, 586 (7th Cir. 2021) ("Due process requires that a party be given an opportunity to respond to an argument or evidence raised as a basis to dismiss his or her claims." (cleaned up)); *Dutta v. State Farm Mut. Auto. Ins. Co.*, 895 F.3d 1166, 1171–72 (9th Cir. 2018) ("Plainly, the practice rules recognize the potential inequities that might flow from the injection of new matter" without providing the opposing party an opportunity to respond).

Dkt. No. 105 at 6. This does not mean a party is without options when circumstances prevent it from presenting relevant arguments or evidence to the court in a motion or response brief:

> The appropriate way to introduce such arguments or evidence is through a motion for leave, not through unilaterally presenting new materials to the Court that are outside the scope of its supplemental briefing order and misrepresenting to the Court that such materials are properly before it. *See United States v. Corral-Calderon*, No. CR2100228001PHXGMS, 2021 WL 6197906, at *1 n.1 (D. Ariz. Dec. 29, 2021) (holding that court could not consider facts and arguments in

---

[4] The Court's September 9 order permitted the Government to submit a supplemental brief responding only to the new arguments in Mr. Jefferson's reply brief and to his supplemental brief regarding remedial measures. Dkt. No. 70 at 13.

defendant's "new filing amount[ing] to a sur-sur-reply filed without leave of Court"); *United States v. Abrams*, No. 314CR00069MMDWGC, 2020 WL 1866263, at *3 (D. Nev. Apr. 13, 2020) (striking defendant's improper attempt to supplement his motion without leave of court); *cf. United States v. Williams*, 693 F.3d 1067, 1072 n.2 (9th Cir. 2012) (party waived argument by raising it after the close of briefing at oral argument, depriving the opposing party of "a fair opportunity to respond comprehensively to [the] claim" and the court "of the benefit of a robust debate informed by zealous advocacy" (quoting *Outdoor Media Grp., Inc. v. City of Beaumont,* 506 F.3d 895, 900 (9th Cir. 2007)).

Dkt. No. 105 at 6–7. If a party receives new evidence after the court has ruled on a motion, it may seek reconsideration of the order based on the "new facts or legal authority which could not have been brought to [the court's] attention earlier with reasonable diligence." LCrR 12(b)(13)(A).

Finally, Jefferson's repeated assertions that the facts were undisputed, Dkt. No. 145 at 1–2, are unsupported and irrelevant. Rules 12(b)(1)–(3) make no exception for facts that are not disputed; instead, as the Court explained in its September 9 order, the duty to submit supporting exhibits is triggered when "consideration of facts not appearing of record" is required. Dkt. No. 70 at 4. As Rule 12(b) suggests, the Court cannot simply take a party's word for it; the party must support its factual assertions with evidence.[5]

Thus, contrary to the arguments in Jefferson's motion, Dkt. No. 145 at 2, the following findings in the Court's October 7 order are amply supported:

---

[5] Jefferson complains that the Court unfairly "questioned the veracity of counsel's representation that the Government produced body camera footage only after it had filed its supplemental brief," and should not have stricken as untimely the new arguments introduced for the first time in Jefferson's supplemental reply brief. Dkt. No. 145 at 2. The new arguments were not stricken because they were untimely. They were stricken because they once again violated the Court's order defining the permissible scope of the supplemental submissions. Dkt. No. 105 at 7 n.3 ("Jefferson repeated th[e] error [of improperly asserting new arguments] in his supplemental reply. The Court permitted him only to respond to the Government's supplemental brief on '(1) Officer Galt's report, and (2) remedial measures.' Dkt. No. 70 at 13. Instead, Jefferson advanced new arguments regarding body camera footage he allegedly received after the Government filed its supplemental brief. Dkt. No. 86 at 2–4."). Thus, regardless of when the Government produced the body camera footage, Jefferson had no license to introduce new arguments in his supplemental reply.

As for Jefferson's representation regarding the timing of production, it again violated Rule 12(b)(1) and (3). Specifically, "Jefferson's counsel did nothing to support his factual assertion regarding when they received the footage[.]" Dkt. No. 105 at 7 n.3. In other words, it was Jefferson's job to establish "the veracity of counsel's representation[s]" with supporting evidence. *See* LCrR12(b)(1), -(3). He did not do this.

1

2

3

     (1) it is demonstrably untrue that Jefferson relied on exhibits 1, 4, 5, 6, 8, 17, 22, 23, and 24 in briefing submitted before those documents were received, (2) the falsities in counsel's declaration undermine its reliability, (3) Jefferson failed to mark exhibits to designate testimony or evidence referred to in his filings, and (4) Jefferson did not seek leave or another appropriate mechanism to present these materials to the Court[.]

4

5

6

7

8

9

Dkt. No. 105 at 7. These findings, in turn, supported the Court's decision to strike the noncompliant exhibits and associated arguments from the record and to deem the defense's repeated failures to comply with Local Criminal Rule 12 and the Court's orders as an admission that defense's motion did not have merit under Rule 12(b)(4). *Id.*[6] Accordingly, Jefferson has failed to demonstrate error in the Court's prior ruling.

10

11

12

13

     The Court again clarifies that the failings described above did not amount to ineffective assistance of counsel under *Strickland v. Washington,* 466 U.S. 668 (1984). The Court explained in its October 7 order that even if Jefferson's new arguments and exhibits were properly before the Court, his motion lacked merit. Dkt. No. 105 at 8–20.

14

## II.   CONCLUSION

15

16

     For the above reasons, the Court GRANTS IN PART AND DENIES IN PART Jefferson's motion for partial reconsideration. The motion is granted insofar as the Court has fully reconsidered its decision; however, upon such reconsideration, the Court reaches the same result.

17

18

     Dated this 22nd day of November, 2024.

19

20

Lauren King
United States District Judge

21

22

23

24

---

[6] As the above discussion demonstrates, at this point, Jefferson had repeatedly violated the Court's orders. It was therefore reasonable for the Court to require declarations ensuring compliance with its directives. *Id.* at 8.