UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　　　　Plaintiff,<br>　　v.<br><br>JOSEPH MICHAEL QUINCY JEFFERSON,<br><br>　　　　　　　　Defendant. | CASE NO. 2:23-cr-00109-LK<br><br>ORDER ON MOTION FOR REVIEW OF DETENTION ORDER |

This matter comes before the Court on Defendant Joseph Michael Quincy Jefferson's Motion for Review of Detention Order Pursuant to 18 U.S.C. § 3145(b). Dkt. No. 123. Having conducted a de novo review and considered the relevant record, including Judge Peterson's order revoking Jefferson's bond and the related hearing transcript, Dkt. Nos. 120, 123-1, the Court denies the motion.

**I.　BACKGROUND**

The Government plans to try Jefferson before a jury for one count of Assault by Strangulation in violation of 18 U.S.C. §§ 113(a)(8) and 1153(a). Dkt. No. 13. Trial is scheduled

ORDER ON MOTION FOR REVIEW OF DETENTION ORDER - 1

to begin on January 13, 2025. Dkt. No. 115.

Jefferson made his initial appearance on June 27, 2023 and was remanded to custody. Dkt. No. 5. After a detention hearing on June 29, 2023, Jefferson was released under Pretrial Services' supervision and subject to special conditions. Dkt. No. 9. Those conditions included (among others) that Jefferson have "[n]o direct or indirect contact with [the] alleged victim in this case" nor any "direct contact or indirect contact with any existing and/or future witnesses in this case." Dkt. No. 10 at 1. The conditions of Jefferson's bond were amended in August and October 2023, but the conditions that he have no contact with the alleged victim (Jane Doe) and potential witnesses were unchanged. Dkt. Nos. 26, 34.

On September 11, 2024, Doe was appointed counsel in contemplation of her role as a potential witness at trial. Dkt. No. 63; Dkt. No. 98 at 1.

On October 1, 2024, the Government moved to revoke Jefferson's bond. Dkt. No. 90. According to the Government, Jefferson had repeatedly and willfully violated the special condition that he have no contact with Doe. *Id.* at 1. Specifically, the Government contended that between December 2023 and September 2024, Jefferson and Doe "purchased tickets to the same movie showings, selected adjoining seats, and used electronic tickets on their cell phones, which were scanned to gain access to the same auditorium together at least fifty-seven (57) times[.]" *Id.* at 8.

On October 2, 2024, Pretrial Services petitioned the Court to issue a warrant for Jefferson's arrest because he "violated the bond condition prohibiting direct or indirect contact with the alleged victim (Jane Doe) in this case by having direct contact with Jane Doe at least 57 times since or on about December 25, 2023." Dkt. No. 95 at 2. A warrant was issued later that day. Dkt. No. 96. At his initial bond revocation hearing the following day, Jefferson denied the allegations and requested a follow up bond revocation hearing. Dkt. No. 101. Judge Peterson ordered Jefferson detained and he was taken into custody after the hearing. *See id.*

ORDER ON MOTION FOR REVIEW OF DETENTION ORDER - 2

On October 22, 2024, the parties reconvened before Judge Peterson for Jefferson's bond revocation hearing conducted pursuant to 18 U.S.C. § 3148(b). Dkt. No. 118. Jefferson admitted to the supervised release violation, and after hearing argument from the parties, Judge Peterson revoked Jefferson's bond pending trial. *Id.* Specifically, Judge Peterson found that, pursuant to 18 U.S.C. § 3148(b)(1)(B), "there is clear and convincing evidence that Mr. Jefferson violated his bond condition to avoid direct or indirect contact with Jane Doe as he admitted to doing so at the hearing," and he "was unlikely to abide by any conditions of release under § 3148(b)(2)(B) given that he had violated the condition not to have contact with Jane Doe at least 57 times." Dkt. No. 120 at 3.

Jefferson's motion for review of Judge Peterson's bond revocation and detention order followed. He argues that the "bond revocation hearing violated serious constitutional, statutory, and procedural rights" and "requests a remand to allow a hearing to occur that complies with both the defendant's and victim's rights, as well as to create a complete record for review by this Court and, if necessary, by the Ninth Circuit Court of Appeals." Dkt. No. 123 at 1.

## II.   DISCUSSION

### A.   Standard of Review

The Bail Reform Act governs pretrial confinement and release. *See* 18 U.S.C. § 3141 et seq. "If a person is ordered detained by a magistrate judge" they may file "with the court having original jurisdiction over the offense, a motion for revocation or amendment of the order." 18 U.S.C. § 3145(b). A district court reviews the detention order de novo. *United States v. Koenig*, 912 F.2d 1190, 1191–93 (9th Cir. 1990).

### B.   Legal Standard

A person who has violated a condition of their release is subject to revocation of release and detention. 18 U.S.C. § 3148(a). To revoke a person's release and order detention, a court must

hold a hearing and undertake the following a two-step inquiry:

- First, a court must find either "probable cause to believe that the person has committed a Federal, State, or local crime while on release" or "clear and convincing evidence that the person has violated any other condition of release." *Id.* § 3148(b)(1).

- Second, a court must find that "there is no condition or combination of conditions of release that will assure that the person will not flee or pose a danger to the safety of any other person or the community," considering the 18 U.S.C. § 3142(g) factors; or that "the person is unlikely to abide by any condition or combination of conditions of release." *Id.* § 3148(b)(2).

Although Section 3148(b)(2) does not specify the standard of proof required, the Second and Fifth Circuits have held that findings made under that section may be established by a preponderance of the evidence. *United States v. Gotti*, 794 F.2d 773, 778 (2d Cir. 1986); *United States v. Aron*, 904 F.2d 221, 223–24 (5th Cir. 1990). The Ninth Circuit has not weighed in, but other district courts in this Circuit have used the preponderance of evidence standard. *United States v. Desmond*, No. 2:22-CR-00188-TL, 2023 WL 4052415, at *2 n.2 (W.D. Wash. June 16, 2023) (citing cases).

### C.     Jefferson's Due Process Rights Were Not Violated at the Bond Revocation Hearing

Jefferson argues that he was "denied due process when the Court did not allow him to call a witness to testify or to proffer at the revocation hearing." Dkt. No. 123 at 8. He also contends that "the Court prevented testimony and a proffer on the relevant factors"—i.e., the 18 U.S.C. § 3142(g) factors—"during the defense presentation." Dkt. No. 141 at 3. Specifically, although Judge Peterson determined that if she found under 3148(b)(2)(B) "that [Jefferson] is unlikely to abide by the bond conditions, [she] d[id]n't even have to address 3142(g)," Dkt. No. 123-1 at 10–

11; *see also id.* at 13–14, Jefferson argues that Section 3148(b)(2)(B) requires consideration of the 3142(g) factors. Dkt. No. 123 at 10–11; *see also* Dkt. No. 123-1 at 11 ("MR GEIST: I think 3142(g) refers to both (a) and (b), and so that's why it's important. It would be -- I think that reference would go to both, and that's our position."). The Government responds that (1) the bond revocation hearing before Judge Peterson did not deprive Jefferson of his due process rights because he provided evidence "by way of proffer and much of the information his defense wanted to discuss was otherwise before the Court as provided by the government, *i.e.*, Jane Doe's various statements," and (2) Jefferson has not established a right to call witnesses. Dkt. No 133 at 2–3.

Judge Peterson did not err: Section 3148(b)(2)(B) does not require consideration of the 3142(g) factors. Where, as here, a defendant admits to violating a supervised release condition, *id.* § 3148(b)(1), the court may revoke his bond upon finding by a preponderance of the evidence that either (A) "there is no condition or combination of conditions of release that will assure that the person will not flee or pose a danger to the safety of any other person or the community," considering the 18 U.S.C. § 3142(g) factors; **or** (B) "the person is unlikely to abide by any condition or combination of conditions of release." *Id.* § 3148(b)(2).[1] The statutory language is unambiguous; the reference to the 3142(g) factors is in subsection (A) only. The analysis in *United States v. Storme*, 83 F.4th 1078, 1082 (7th Cir. 2023) does not counsel otherwise,[2] but to the extent it does, the opinion is not binding and provides no reasoning as to why a district court must consider the 3142(g) factors when making findings under Section 3148(b)(2)(B) only. Indeed:

---

[1] As described above, Section 3148(b)(2) does not specify the standard of proof required, but the Court assumes without deciding that a preponderance of evidence standard applies. *See Desmond*, 2023 WL 4052415, at *2 n.2. The Court notes that its decision would be the same under that standard and the clear and convincing standard; the evidence in the record demonstrates by clear and convincing evidence that Jefferson is unlikely to abide by any condition or combination of conditions of release. *See, e.g.*, Dkt. No. 120 at 3 ("At the October 22, 2024, hearing, Mr. Jefferson admitted to having direct contact with Jane Doe at least 57 times since or on about December 25, 2023.").

[2] The Court in *Storme* first found that Section 3148(b)(2)(B) was not satisfied, and therefore proceeded to address the 3142(g) factors only in the context of addressing whether Section 3148(b)(2)(A) was satisfied. *Id.* at 1083.

ORDER ON MOTION FOR REVIEW OF DETENTION ORDER - 5

> In construing the statute courts are to "adhere to the usual axiom that Congress 'says in a statute what it means and means in a statute what it says there.'" *United States v. Romo-Romo*, 246 F.3d 1272, 1274 (9th Cir. 2001) (quoting *Hartford Underwriters Ins. Co.*, 530 U.S. at 5 (citation omitted). In doing so "we should usually give words their plain, natural, ordinary and commonly understood meanings." *Romo-Romo*, 246 F.3d at 1274. Here, it is clear that the Legislature understood the difference between "and" and "or" as they are both used in the statute. Review of the statute demonstrates that at least one condition from section (b)(1) and one condition from section (b)(2) must exist. If the intent was that both conditions from section (b)(2) must exist then Congress would have used "and" rather than "or" in drafting the statutory language. Further, requiring a finding that the defendant is a flight risk or danger would make (b)(2)(B) superfluous. "It is 'a cardinal principle of statutory construction' that 'a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant.'" *TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001) (quoting *Duncan v. Walker*, 533 U.S. 167, 174 (2001)).

*United States v. Patterson*, No. 119-CR-00230-DAD-BAM-1, 2020 WL 6200164, at *9 (E.D. Cal. Oct. 22, 2020); *see also United States v. Manafort*, 897 F.3d 340, 345–46 (D.C. Cir. 2018) ("Either finding provides an independent basis for detention, so upholding either finding is sufficient to uphold the District Court's detention order. . . . Because we find no clear error in the District Court's finding that Appellant is unlikely to abide by any conditions of release [under Section 3148(b)(2)(B)], we affirm and therefore do not reach the challenge to the dangerousness finding [under Section 3148(b)(2)(A)]."). The Court will not adopt a reading of Section 3148(b)(2) that contravenes its plain language.

As discussed in detail in the next section, even assuming without deciding that a defendant has an absolute right to call witnesses at a bond revocation hearing, the only evidence Jefferson was unable to present at the hearing (either by proffer or by calling Doe as a witness) was only relevant to Section 3148(b)(2)(A), which was immaterial. Jefferson does not argue (and the hearing transcript does not reflect) that he was unable to present any evidence relevant to the likelihood that he would abide by his conditions of release. Indeed, Judge Peterson invited Jefferson to present "argument or evidence or information . . . that relates to [his] conduct" on supervised released and

ORDER ON MOTION FOR REVIEW OF DETENTION ORDER - 6

as related to whether he is unlikely to abide by any condition or combination of conditions of release under Section 3148(b)(2)(B). Dkt. No. 123 at 5–6; Dkt. No. 123-1 at 13–14.[3]

The Court therefore finds that Jefferson's statutory and due process rights were not violated.

**D.  Judge Peterson Did Not Err in Declining to Hear Doe's Testimony**

Again assuming without deciding that Section 3148(b) provides defendants with the right to call witnesses at a bond revocation hearing, Jefferson did not offer Jane Doe as a witness with respect to 18 U.S.C. § 3148(b)(2)(B)—i.e., whether Jefferson would be "unlikely to abide by any condition or combination of conditions of release." Instead, Jefferson exclusively confined her potential testimony to subject matter relevant to Section 3148(b)(2)(A). When asked what legal basis supported Doe's testimony, Jefferson stated, "It's contained within 18 U.S.C. 3148, which in 3148(b)(2) finds that the Court has to consider Section 3142(g)." Dkt. No. 123-1 at 10; *see also* Dkt. No. 123 at 4 ("The defense pointed to the statute 18 U.S.C. § 3148 and its citation to 18 U.S.C. § 3142(g), which included the nature and circumstances of the offense charged and the weight of the evidence[.]"). He continued, "The issue here is whether, at least based off of what the alleged victim is saying, whether we are going to, on the factors in 3148 and 3142(g), going to keep someone in custody who is potentially not guilty or innocent of what has been previously alleged." Dkt. No. 123-1 at 14; *see also* Dkt. No. 123 at 5. And he later reiterated:

> [J]ust for the record, we believe that 3142 does allow Mr. Jefferson an opportunity to testify, to present witnesses, to cross-examine witnesses who appear at the hearing, and to present information by proffer or otherwise. I understand Your

---

[3] As Jefferson points out, Judge Peterson did at least partially consider the Section 3142(g) factors in a "belt and suspenders" approach, and concluded under Section 3148(b)(2)(A) that Jefferson "is a danger to the community and there are no conditions or combination of conditions . . . that would ensure the safety of the community" if he were released. Dkt. No. 123 at 6–8; Dkt. No. 123-1 at 15. But Judge Peterson clarified in the subsequent written order that she was revoking his bond solely based on findings made under Section 3148(b)(2)(B). Dkt. No. 120 at 3–5. Furthermore, where, as here, the revocation is sufficiently supported under Section 3148(b)(2)(B), any error associated with the process under Section 3148(b)(2)(A) is harmless. *Cf. United States v. Olvera-Chavarin*, 232 F.3d 898 (9th Cir. 2000) (process violation was harmless when there was an independent basis for court's decision).

ORDER ON MOTION FOR REVIEW OF DETENTION ORDER - 7

> Honor's position, that you don't want to hear anything about the underlying offense. I can tell you that based off of what the alleged victim told us is that there is no offense here that Mr. Jefferson committed, and she's prepared to say that under oath, I believe, that this did not occur the way that was put forward by prosecutors and that she did make statements before.

Dkt. No. 123-1 at 16; *see also* Dkt. No. 123 at 6. Because Judge Peterson found that "Jefferson was unlikely to abide by any conditions of release under § 3148(b)(2)(B)," Dkt. No. 120 at 3–5, Doe's testimony relative to 3148(b)(2)(A) was immaterial. Judge Peterson therefore did not err in declining to hear such testimony.

Jefferson now argues that Jane Doe was prevented from testifying about "Mr. Jefferson's ability to abide by [bond] conditions in the future." Dkt. No. 123 at 13. But the transcript belies that assertion: Jefferson did not offer Doe's testimony on this subject at the hearing before Judge Peterson, even though he was invited to do so. Dkt. No. 123 at 5–6; Dkt. No. 123-1 at 13–14. Jefferson also does not indicate what Jane Doe would have to say on this matter. *See generally* Dkt. No. 123. The most he offers is a conclusory statement that Doe would testify that he would abide by his bond conditions. *Id.* at 1. However, his arguments on appeal reinforce that Doe's potential testimony relates only to the 3142(g) factors. *See, e.g.*, *id.* at 7 ("To the point of Doe's proposed testimony, counsel indicated the government failed to present any evidence related to the danger to the alleged victim during any of these 57 contacts while the bond was in place." (cleaned up)); *id.* at 8 (because "Mr. Jefferson is innocent of the charged offense," he was "denied due process when the Court did not allow him to call a witness to testify or to proffer at the revocation hearing"); Dkt. No. 141 at 3 ("Defense counsel repeatedly attempted to complete a proffer related to the weight of the evidence and nature and circumstances of the offense"); *id.* at 4 (the victim witness coordinator's statement regarding Doe's communications about the assault "are incomplete or misleading," which is "precisely why testimony from Doe or—at the very least—a defense proffer was necessary and relevant"). The Court is left without any basis for Doe's

ORDER ON MOTION FOR REVIEW OF DETENTION ORDER - 8

testimony on Jefferson's ability to comply with bond conditions. Significantly, there is no indication that either Doe or Jefferson contests that he violated his bond conditions at least 57 times, and that when he was questioned by his Probation Officer about his unusually frequent theater visits, he twice "denied going with Jane Doe" and stated that he "went with his kids, father, or by himself." Dkt. No. 97 at 2. The 57 violations alone constitute a sufficient basis to find that Jefferson is unlikely to abide by any conditions of release under § 3148(b)(2)(B).

E.  **Jefferson Does Not Have Standing to Assert Doe's Right to be "Reasonably Heard"**

Finally, Jefferson argues that in preventing him from calling Doe as a witness, Judge Peterson violated Doe's right "to be reasonably heard at any public proceeding in the district court involving [defendant's] release" under the Crime Victims' Rights Act ("CVRA"). Dkt. No. 123 at 11–12 (citing 18 U.S.C. § 3771(a)(4)). The CVRA gives crime victims standing to vindicate their procedural and substantive rights in criminal cases independently of prosecutors, *see* 18 U.S.C. § 3771(d), and also imposes on the judiciary an affirmative obligation to "ensure" that those rights are "afforded," *id.* § 3771(b). A pretrial detention or bail hearing is a "public proceeding in the district court involving release," so the CVRA provides victims the right to be "reasonably heard" at such hearing. *See, e.g.*, *United States v. Dearing*, No. 1:21-MJ-00007-SKO, 2021 WL 672987, at *2–3 (E.D. Cal. Feb. 22, 2021).

However, Jefferson has no standing to enforce Doe's rights under the CVRA. The statute specifically states that "[a] person accused of the crime may not obtain any form of relief under this chapter." 18 U.S.C. § 3771(d)(1). The statute allows only "[t]he crime victim or the crime victim's lawful representative, and the attorney for the Government [to] assert the rights described in subsection (a)." 18 U.S.C. § 3771(d)(1).

Although Doe and her attorney were present at Jefferson's bond revocation hearing, Dkt. No. 123-1 at 9, there is no indication that Doe announced an intention to be heard. Although the

Court has an affirmative obligation to ensure that Doe is afforded her rights under the CVRA, 18 U.S.C. § 3771(b), she (or the Government) must file a motion informing the Court of her desire to be heard, *id.* § 3771(d)(3).[4] Doe did not do so here, and Jefferson cannot speak for her in representing that she wished to be heard. *See* Dkt. No. 123 at 12.

If Doe wishes to have an opportunity to assert her rights under the CVRA, she is free to file an appropriate motion.

### III.   CONCLUSION

For the reasons given above, the Court denies Jefferson's Motion for Review of Detention Order. Dkt. No. 123.

Dated this 10th day of December, 2024.

Lauren King
United States District Judge

---

[4] The Court expresses no opinion as to whether testimony regarding bond violations in which the victim voluntarily participated is encompassed within the victim's right to be heard under the CVRA.