1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                    Plaintiff,<br><br>        v.<br><br>JOSEPH MICHAEL QUINCY<br>JEFFERSON,<br><br>                    Defendant. | CASE NO. 2:23-cr-00109-LK<br><br>ORDER DENYING JEFFERSON'S<br>MOTIONS FOR RECONSIDERATION<br>AND FOR LEAVE TO PRESENT<br>EXPERT REPORT |

This matter comes before the Court on Defendant Joseph Michael Quincy Jefferson's Motion for Reconsideration, Dkt. No. 152, and Motion for Leave to Present Expert Report in Support of the Motion to Reconsider the Motion to Dismiss Indictment and the Corresponding Reply, Dkt. No. 161. For the reasons explained below, both motions are denied.

## I.    BACKGROUND

The Government plans to try Jefferson before a jury for one count of Assault by Strangulation in violation of 18 U.S.C. §§ 113(a)(8) and 1153(a). Dkt. No. 13. Trial is scheduled to begin on January 13, 2025. Dkt. No. 115.

The pretrial motions deadline was August 19, 2024. Dkt. No. 53. On that date, Jefferson filed motions in limine, a motion to dismiss the indictment on due process grounds, and a motion to dismiss or cure the duplicitous indictment. Dkt. Nos. 55–57. On September 3, 2024, the Court granted in part and denied in part Jefferson's motions in limine. Dkt. No. 64. On September 9, 2024, the Court denied in part and deferred in part Jefferson's motion to dismiss the indictment on due process grounds and denied as moot his motion to dismiss or cure the duplicitous indictment. Dkt. No. 70. And on October 7, 2024, after receiving supplemental briefing on the motion to dismiss the indictment on due process grounds, the Court denied the portions of the motion upon which it had deferred ruling. Dkt. No. 105.

Because the parties' proposed supplemental briefing schedule left the Court with insufficient time to complete the remaining pretrial tasks (including a potential evidentiary hearing), on September 12, 2024 the Court sua sponte continued trial to October 21, 2024. Dkt. No. 74. The Court did not permit any new pretrial motions in that order. *Id.* at 5. Jefferson then filed a motion to continue trial. Dkt. No. 100. At the hearing on that motion, the parties indicated that there may be a need to file additional pretrial motions. Dkt. No. 104. The Court cautioned that because the pretrial motions deadline had passed, the parties would need leave of court to file any belated pretrial motions.

On October 17, 2024, the Court continued trial to January 13, 2025. Dkt. No. 115. It instructed the parties that any motion for leave to file additional pretrial motions must "demonstrate good cause under Federal Rule of Criminal Procedure 12(c)(3) and address why the underlying motion could not have been brought prior to the now-elapsed August 19, 2024 pretrial motion deadline." *Id*. at 4. The Court warned that "[t]he parties should not presume that the Court will entertain arguments based on exhibits submitted as part of the supplemental briefing on Jefferson's motion to dismiss." *Id.*

On November 11, 2024, Jefferson filed a motion for leave and attached his proposed pretrial motion—a second motion to dismiss the indictment on due process grounds. Dkt. Nos. 130, 130-5. He also moved for permission to exceed Local Criminal Rule 12(b)(5)'s word limit for the motion to dismiss by approximately 1,600 words. Dkt. No. 127; *see* LCrR 12(b)(5) (standard word limit is 4,200 words); Dkt. No. 130-5 at 19 (Jefferson's proposed motion contained 5,843 words). The Court granted Jefferson's motion to file an overlength motion and granted in part and denied in part his motion for leave. Dkt. No. 147 at 6. As to the latter, the Court explained that "[b]ecause the Court already decided Jefferson's motion to dismiss, his proposed second motion to dismiss is really one for reconsideration." *Id.* at 4. The Court therefore rejected Jefferson's motion for leave to file his proposed motion as then styled, but permitted him to file a motion for reconsideration that complied with Local Criminal Rule 12(b)(13) by November 27, 2024. *Id.* at 5. The Court also set forth the parameters for Jefferson's motion for reconsideration:

> The motion for reconsideration must show either "manifest error in the prior ruling or . . . new facts or legal authority which could not have been brought to [the Court's] attention earlier with reasonable diligence," and must "point out with specificity the matters which the movant believes were overlooked or misapprehended by the court, any new matters being brought to the court's attention for the first time, and the particular modifications being sought in the court's prior ruling." LCrR 12(b)(13)(A)–(B). The Court does not consider any exhibits produced prior to September 9, 2024 as new facts that could not have been brought to its attention earlier with reasonable diligence.

*Id.* at 6.[1] On November 27, 2024, Jefferson filed his motion for reconsideration. Dkt. No. 152. Pursuant to the Court's minute order from that same day, the Government filed its response brief on December 4 and Jefferson filed his reply on December 9. Dkt. Nos. 154 (text only), 158, 162.

Also on December 9, Jefferson filed a motion for leave to present a report by defense expert

---

[1] The Court issued its first order on Jefferson's motion to dismiss on September 9, 2024. Dkt. No. 70. Relevant discovery received before Jefferson filed his initial motion to dismiss on August 19 should have been raised in that motion. Jefferson also had ample time to present to the Court any relevant discovery received while the motion was pending. Thus, the Court was not willing to consider any argument from Jefferson that discovery received by or before September 9, 2024 could not have been brought to the Court's attention earlier with reasonable diligence.

ORDER DENYING JEFFERSON'S MOTIONS FOR RECONSIDERATION AND FOR LEAVE TO PRESENT EXPERT REPORT - 3

Russ Hicks in support of his motion for reconsideration. Dkt. No. 161. Jefferson "asks the Court to consider [the] expert report on police training, practices, and culture" in conjunction with his pending motion for reconsideration. *Id.* at 2.

## II.    DISCUSSION

### A.    Legal Standard

"Motions for reconsideration are disfavored," and the Court "will ordinarily deny such motions in the absence of a showing of manifest error in the prior ruling or a showing of new facts or legal authority which could not have been brought to its attention earlier with reasonable diligence." LCrR 12(b)(13)(A). A movant who seeks reconsideration "shall point out with specificity the matters which the movant believes were overlooked or misapprehended by the court, any new matters being brought to the court's attention for the first time, and the particular modifications being sought in the court's prior ruling." LCrR 12(b)(13)(B). A party seeking leave to supplement his briefing must likewise present a legitimate explanation for his failure to raise the issue earlier. LCrR 12(b)(13)(A); *United States v. Anderson*, 472 F.3d 662, 670 (9th Cir. 2006).

### B.    Jefferson's Motion for Reconsideration is Denied

Jefferson moves for reconsideration on the basis of a "new fact or matter being brought to the Court's attention for the first time[.]" Dkt. No. 152 at 1. For the reasons explained below, the "new facts" Jefferson proffers are either not "facts" or are not "new."

1.    <u>The November 21, 2024 Email is Not a "New Fact"</u>

Jefferson's primary "new fact" is a November 21, 2024 email from the Government where (in Jefferson's telling) it "admitted it did not know Mr. Jefferson told Officer Granger, shortly after he was arrested on April 8, 2023, that he feared Doe would stab him with a knife and he needed to act in self-defense or else get stabbed." *Id.*; *see also* Dkt. No. 152-1.

1    In the email, the Government highlighted the following uncited proposition from

2    Jefferson's reply in support of his motion for review of Judge Peterson's detention order:

> 19    Almost immediately after the alleged altercation, Doe told law enforcement that
> 20    she brandished a knife, essentially escalating an argument into a physical confrontation.
> 21    On the date of the alleged offense, Mr. Jefferson told law enforcement that he had to
> 22    defend himself because Doe pulled a knife on him and he feared she would stab him.
> 23    The government knows that both of these pieces of evidence exist.

Dkt. No. 152-1 at 2 (highlighted excerpt from Dkt. No. 141 at 5). The Government then asked
"[w]here in discovery did Jefferson tell [law enforcement] that he had to defend himself because
Doe pulled a knife on him and he feared she would stab him?" *Id.* Jefferson responded with a Bates
number and a time stamp. *Id.*

    In Jefferson's motion for reconsideration, he writes that

[t]his government admission now proves what the defense has claimed all along:
Granger acted in bad faith by successfully hiding key evidence from the
government, including the knife, by sanitizing reports and failing to perform the
most basic of investigations. He acted in bad faith because the evidence suggests
that he believed he had the duty to tailor an investigation based on what he thinks
is just, rather than following normal police procedures and his training.

Dkt. No. 152 at 2. The Government responds that its November 21 email merely requested
clarification from Jefferson on the source of the uncited factual proposition in his brief, and is not
evidence or an admission that Officer Granger hid evidence from the Government. Dkt. No. 158
at 3.

    The Court agrees with the Government that its November 21 email does not establish a
"fact" that Officer Granger hid evidence from the Government. The only fact established by the
email is that the Government sought clarification about the source of Jefferson's assertion that he
told law enforcement "that he had to defend himself because Doe pulled a knife on him and he
feared she would stab him." Dkt. No. 152 at 8. It is undisputed that Officer Granger's body camera

footer—and Jefferson's statements therein relating to self-defense—was made available to both the Government and Jefferson no later than August 26, 2024. Dkt. No. 162 at 3.[2] Jefferson does not assert that Granger prevented or delayed its production, and instead blames the Government for "wait[ing] to acquire the body camera footage" and potentially failing to watch the footage. *Id.* That the Government waited to acquire footage or failed to watch it or recall its contents does not mean that Officer Granger lied to or withheld information from the Government. Dkt. No. 152 at 9.

The Court notes that it appears that the actual "fact" that Jefferson seeks to get in front of the Court is the statement Jefferson made to Officer Granger suggesting that he acted in self-defense. But Jefferson concedes that he has had access to the footage containing that statement since August 2024, and chose "[f]or strategic reasons . . . to not address this fact until very recently." Dkt. No. 152 at 9 n.1. Indeed, he acknowledges that "[t]he body camera footage does not serve as a basis for the motion to reconsider." *Id.*

In sum, the November 21 email does not establish "that officers deliberately ignored and hid evidence from the defense, from Lummi judges, FBI case agents, and the Assistant United States Attorneys," Dkt. No. 152 at 10, and the underlying evidence alleged to have been hidden was produced to Jefferson in August and deliberately not used in the first motion to dismiss for strategic reasons.[3] There are no new facts here.

---

[2] This appears to be one of many discovery items produced to the defense in late August following the Government's follow-up with the Lummi Nation Police Department, Bellingham Fire Department, and the hospital where Doe was treated "to secure any additional materials or information relating to the case against Jefferson." Dkt. No. 82 at 8; *see also* Dkt. No. 82-7 at 2; Dkt. No. 81 at 3–4.

[3] Even if this email proved the point that Jefferson seeks to make—that Officer Granger did not convey this information to the Government prosecutors independently of his body camera footage—that would not change the Court's prior analysis on whether Jefferson's due process rights were violated or whether he is otherwise entitled to remedial measures. Again, Officer Granger's body camera video documenting this statement was produced to the government and then to the defense in August 2024, Dkt. No. 158 at 3, so Jefferson was not deprived of this piece of evidence. The fact that the body camera footage was produced approximately 16 months after the offense, Dkt. No.

2.  The Skull and Crossbones Sticker Visible in Body Camera Footage Produced on September 19, 2024 Is Not a "New Fact"

The second "new fact" that Jefferson appears to identify in his motion for reconsideration was already before the Court during the pendency of his initial motion to dismiss. In his motion for reconsideration, Jefferson notes that on September 19, 2024, the Government produced body camera footage showing a sticker on Officer Granger's clipboard with a skull and crossbones that reads: "THE BEATINGS WILL CONTINUE UNTIL MORALE IMPROVES!" Dkt. No. 152 at 8–9; *see also* Dkt. No. 130-2 at 4 (discovery batch 11). Although Jefferson provides argument about the sticker's relevance to law enforcement's purported bias against him, he does not explain why it falls into the category of "new facts." Dkt. No. 152 at 8–9; Dkt. No. 162 at 1–2, 4. Because Jefferson already identified this sticker and provided similar argument in his September 20, 2024 reply to the Government's supplemental briefing, Dkt. No. 88-1 at 3–4, the Court finds it is not a "new fact" that could not have been brought to its attention earlier with reasonable diligence. It is therefore not a proper basis for reconsideration.

3.  The Law Enforcement Training Materials Produced Between September 10–13, 2024 Are Not "New Facts"

Jefferson's motion for reconsideration focuses primarily on the November 21 email, and secondarily on the September 19 body camera footage. In the facts section of his motion, and again in his reply, he also identifies other pieces of evidence received after September 9, 2024. Dkt. No. 152 at 3; Dkt. No. 162 at 1. Although Jefferson does not provide argument as to why these are "new facts," the Court will nonetheless consider whether they qualify as such:

- September 10, 2024: Government produces discovery batch eight, which includes Officer Granger's training records. Dkt. No. 130-2 at 3.

---

162 at 3, does not amount to a due process violation. *See LaMere v. Risley*, 827 F.2d 622, 625 (9th Cir. 1987) (finding due process under *Brady* is typically met if the timing of disclosure gave defendant "an opportunity to make use of the disclosed material"); *United States v. Gordon*, 844 F.2d 1397, 1403 (9th Cir. 1988) (no *Brady* violation where the evidence is disclosed when it would still be of value to the defendant).

ORDER DENYING JEFFERSON'S MOTIONS FOR RECONSIDERATION AND FOR LEAVE TO PRESENT EXPERT REPORT - 7

- <u>September 12, 2024</u>: Government produces discovery batch nine, which includes the training materials for the two-day virtual strangulation training and Lummi Nation Police Department's policies and procedures. *Id.* at 3–4.

- <u>September 13, 2024</u>: Government produces discovery batch 10, which comprises the Indian Police Training Academy Materials. *Id.* at 4.

All of the above materials could have been brought to the Court's attention earlier with reasonable diligence. Indeed, Jefferson submitted them into the record as part of his supplemental briefing during the pendency of his initial motion to dismiss. Dkt. No. 75 at 4; Dkt. No. 81 at 6. Jefferson also provided argument on these materials in his September 20, 2024 reply to the Government's supplemental briefing. Dkt. No. 88-1 at 5. Although the Court's subsequent order on the deferred portions of Jefferson's motion to dismiss criticized the manner in which Jefferson introduced this late-breaking discovery into the record as well as his attempt to raise arguments related to these law enforcement training materials for the first time in his supplemental reply brief, the Court ultimately considered the merits of his argument. Dkt. No. 105 at 13–14. After considering Jefferson's arguments and the underlying materials, the Court concluded that "Jefferson's argument that law enforcement did not follow their training and relevant policies lacks merit." *Id.* Jefferson's motion for reconsideration does not argue that the Court's prior order overlooked or misapprehended anything with respect to these materials.

## C.    Jefferson's Motion for Leave is Denied Because the Expert Report Does Not Present "New Facts"

Finally, the defense's expert report (the "Hicks Report") that is the subject of Jefferson's motion for leave is not a proper basis for reconsideration. Although the Hicks Report is new, the underlying facts on which it is based are not. Jefferson's motion for leave appears to recognize as much: "As the defense reviewed the additional evidence *produced in August and September 2024*, it punctuated how many police internal policies, procedures, and trainings were repeatedly ignored in the investigation of this case," so "the defense hired an expert on police training and police

1    culture to examine the evidence and investigation." Dkt. No. 161 at 3 (emphasis added); *see also*

2    *id.* at 4 (acknowledging that "[t]he defense has previously cited to the LNPD Policies and

3    Procedures, various training manuals and curricula, and specialized courses that were blatantly

4    disregarded.").

5        Jefferson states that "[b]y seeking to introduce Mr. Hicks's expert report, the defense does

6    not raise new arguments," *id.* at 3, but that underscores the problem: Mr. Hicks' report purports to

7    buttress arguments that either were raised earlier or should have been raised earlier. For example,

8    Jefferson argues (through quotations from the Hicks Report) that "[i]t appears that Officer Granger

9    was selective in his documentation, focusing solely on Jefferson's inculpatory statements while

10   disregarding any exculpatory evidence." *Id.* at 6–7. The factual basis for this part of Hicks' opinion

11   is Officer Granger's report, which was produced on August 30, 2024 and previously presented and

12   argued to the Court in Jefferson's prior motion to dismiss briefing. Dkt. No. 161-2 at 27 n.26

13   (Hicks Report); Dkt. No. 79 at 31–38 (Officer Granger's report); Dkt. No. 81 at 3 (describing

14   where in prior briefing Jefferson relied on Officer Granger's report). The rest of the Jefferson's

15   argument on the relevance of the expert report is similarly based on (1) evidence already presented

16   to the Court, (2) evidence Jefferson chose not to present to the Court earlier, or (3) the November

17   21 email, which is not a new fact. Jefferson's arguments fail to establish that "[t]he government's

18   response to the Motion to Reconsider makes the defense expert's report especially material at this

19   point[.]" Dkt. No. 161 at 1. The Government's decision not to answer defense questions about

20   whether and when it watched Officer Granger's body camera footage does not make it necessary

21   for the Court to consider "an expert report on police training, practices, and culture." *Id.* at 2; *see*

22   *also* Dkt. No. 161-1. As the Government stated in its response to the defense, "the answers to these

23   questions have no bearing upon the claim that Officer Granger allegedly hid evidence . . . that both

24   defense and the government have possessed since August." Dkt. No. 161-1 at 3.

1    It is immaterial that the Hicks Report was "provided to the government on December 4,

2    2024, in accordance with the expert disclosure deadline." Dkt. No. 161 at 3; *see also* Dkt. No. 157.

3    The deadline for submitting pretrial motions to the *Court*—along with any expert materials that

4    may have been needed to support those motions—was August 19, 2024. Dkt. No. 53. Jefferson

5    does not provide any reason why he could not have presented this report to the Court any earlier

6    than December 9, 2024, nearly three months after the latest relevant discovery produced by the

7    Government. *See generally* Dkt. No. 161; *see also* Dkt. No. 161-2.

8    For these reasons, "the expert report does not constitute a 'new fact' which could not have

9    been brought to [the Court's] attention earlier with reasonable diligence," and "any newly raised

10    arguments based on the expert report do not form an appropriate basis for reconsideration." *Poore-*

11    *Rando v. United States*, No. C16-5094 BHS, 2017 WL 5549580, at *3 (W.D. Wash. Nov. 17,

12    2017).[4]

13

14    [4] Even if the Court considered this expert report, it does not provide sufficient basis to reconsider the Court's order on Jefferson's motion to dismiss.

15    The Court notes that Mr. Hicks' report does not indicate that he has experience with either federal or tribal law enforcement, Dkt. No. 161-2 at 2–4; Dkt. No. 161-3 at 1, and he bases most of his opinions on Washington State law and training on such law, which is inapplicable in this case, Dkt. No. 161-2 at 8, 12 & n.8, 14–25 & nn.14–22, 27, 29–

16    30 & nn.31–32 (repeatedly citing the Revised Code of Washington and Washington State law enforcement training materials); *see also id.* at 31 (concluding that the Lummi Nation Police Department's conduct was incompatible with state police academy training and "established Washington State law enforcement standards"). Washington is an

17    "optional" Public Law 280 state, and has extended state civil and criminal jurisdiction in Indian Country to only eight areas that do not apply here. Wash. Rev. Code § 37.12.010. And although many tribal police officers obtain cross-

18    deputization to enforce state and/or federal law, necessitating training in such law, *see* Kevin Morrow, *Bridging the Jurisdictional Void: Cross-Deputization Agreements in Indian Country*, 94 N.D. L. Rev. 65, 68–69 (2019), that does

19    not render state law applicable to Indian-on-Indian crimes in Indian Country beyond the bounds of Congressional authorization, *see* 1 F. Cohen, Handbook of Federal Indian Law § 7.04 (2024). Of course, the fact that an officer

20    completes training on another jurisdiction's laws and practices does not mean they apply in his jurisdiction.

    Mr. Hicks also cites the 2024 Lummi Nation Police Manual without mentioning whether the provisions he cites were

21    in effect in April 2023. Dkt. No. 161-2 at 11 n.7. Moreover, the few times he does cite Lummi Nation laws or policies, his analysis is conclusory or nonexistent. *See, e.g.*, Dkt. No. 161-2 at 15, 22–23.

22    Because the Court is required to make an explicit reliability finding to satisfy its gatekeeping duty prior to admitting expert testimony, *see United States v. Irons*, 31 F.4th 702, 716 (9th Cir. 2022); *United States v. Valencia-Lopez*, 971

23    F.3d 891 898-99 & n.6 (9th Cir. 2020), the parties should be prepared to address the reliability of Hicks' testimony at the pretrial conference—whether or not it is raised in an appropriate motion prior to that conference. In the absence

24    of such a motion, the parties may submit briefing of no more than 2,800 words each on the admissibility of Mr. Hicks' testimony by December 30, 2024. This briefing is optional.

ORDER DENYING JEFFERSON'S MOTIONS FOR RECONSIDERATION AND FOR LEAVE TO PRESENT
EXPERT REPORT - 10

### III.  CONCLUSION

For the reasons provided above, the Court DENIES Jefferson's Motion for Reconsideration, Dkt. No. 152, and Motion for Leave to Present Expert Report in Support of the Motion to Reconsider the Motion to Dismiss Indictment and the Corresponding Reply, Dkt. No. 161.

Dated this 16th day of December, 2024.

Lauren King
United States District Judge