UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　　　　　Plaintiff,<br><br>　v.<br><br>JOSEPH MICHAEL QUINCY JEFFERSON,<br><br>　　　　　　　　　Defendant. | CASE NO. 2:23-cr-00109-LK<br><br>ORDER ON GOVERNMENT'S MOTIONS TO QUASH TRIAL SUBPOENA AND TO ADMIT EVIDENCE |

　　This matter comes before the Court on two of the Government's pretrial motions: its Motion to Quash Trial Subpoena, Dkt. No. 149, and Motion to Admit Evidence, Dkt. No. 151. For the reasons explained below, the Government's motion to quash is granted[1] and its motion to admit evidence is denied as premature.

### I.　BACKGROUND

　　The Government plans to try Jefferson before a jury for one count of Assault by

---

[1] Because the Court construes the Government's motion as seeking to quash only the subpoena's request for documents, this order does not preclude Jefferson from seeking Tracy Orcutt's testimony at trial. Thus, although the Court quashes Jefferson's subpoena in its current form, Jefferson may re-issue a subpoena for testimony pursuant to Federal Rule of Criminal Procedure 17(a).

ORDER ON GOVERNMENT'S MOTIONS TO QUASH TRIAL SUBPOENA AND TO ADMIT EVIDENCE - 1

1  Strangulation in violation of 18 U.S.C. §§ 113(a)(8) and 1153(a). Dkt. No. 13. Trial is scheduled
2  to begin on January 13, 2025. Dkt. No. 115.

3  The pretrial motions deadline was August 19, 2024. Dkt. No. 53. The Government did not
4  file any pretrial motions by that date. Jefferson filed motions in limine, a motion to dismiss the
5  indictment on due process grounds, and a motion to dismiss or cure the duplicitous indictment.
6  Dkt. Nos. 55–57. On September 3, 2024, the Court granted in part and denied in part Jefferson's
7  motions in limine. Dkt. No. 64. On September 9, 2024, the Court denied in part and deferred in
8  part Jefferson's motion to dismiss the indictment on due process grounds and denied as moot his
9  motion to dismiss or cure the duplicitous indictment. Dkt. No. 70. And on October 7, 2024, after
10 receiving supplemental briefing on the motion to dismiss the indictment on due process grounds,
11 the Court denied the portions of the motion upon which it had deferred ruling. Dkt. No. 105.

12 Because the parties' proposed supplemental briefing schedule left the Court with
13 insufficient time to complete the remaining pretrial tasks (including a potential evidentiary
14 hearing), on September 12, 2024 the Court sua sponte continued trial to October 21, 2024. Dkt.
15 No. 74. The Court did not permit any new pretrial motions in that order. *Id*. at 5. Jefferson then
16 filed a motion to continue trial. Dkt. No. 100. At the hearing on that motion, the parties indicated
17 that there may be a need to file additional pretrial motions. Dkt. No. 104. The Court cautioned that
18 because the pretrial motions deadline had passed, the parties would need leave of court to file any
19 belated pretrial motions.

20 On October 17, 2024, the Court continued trial to January 13, 2025. Dkt. No. 115. It
21 instructed the parties that any motion for leave to file additional pretrial motions must
22 "demonstrate good cause under Federal Rule of Criminal Procedure 12(c)(3) and address why the
23 underlying motion could not have been brought prior to the now-elapsed August 19, 2024 pretrial
24 motion deadline." *Id.* at 4.

ORDER ON GOVERNMENT'S MOTIONS TO QUASH TRIAL SUBPOENA AND TO ADMIT EVIDENCE - 2

On November 11, 2024, the Government moved for leave to file two proposed pretrial motions: a motion to quash and a motion to admit evidence. Dkt. Nos. 125, 128 (proposed motion to quash), 134 (proposed motion to admit evidence). The Court granted the Government leave to file both motions. Dkt. No. 148. The Government filed its motions to quash and to admit evidence on November 27, 2024, Dkt. Nos. 149, 151, and Jefferson filed oppositions to both, Dkt. Nos. 159–60.

## II. DISCUSSION

### A. The Government's Motion to Quash the Subpoena is Granted

The Government moves to quash a subpoena Jefferson issued to its victim witness coordinator, Tracy Orcutt, which it calls a "defense fishing expedition[.]" Dkt. No. 149 at 1–2. Jefferson responds that the subpoena seeks relevant and admissible information, and is not a fishing expedition because it seeks information "that is known to exist." Dkt. No. 159 at 3–8. The Court first describes the relevant factual background and the applicable legal framework before explaining why the Government's motion is granted.

1. Relevant Factual Background

   *(a) Orcutt's role and contacts with Doe*

Each United States Attorney's office has a victim witness program that is staffed by at least one victim witness coordinator or victim advocate. *See* U.S. Attorney's Office, Western District of Washington, *Handbook – Victim and Witnesses: Understanding Your Rights and the Federal Court System*, https://www.justice.gov/usao-wdwa/victim-witness (last visited December 18, 2024) ("Victim Witness Handbook").[2] Victim witness coordinators "work to make sure victims are kept informed of the status of a case and help victims find services to assist them in recovering

---

[2] The Court may take judicial notice of the Victim Witness Handbook as "undisputed and publicly available information displayed on government websites." *King v. Cnty. of Los Angeles*, 885 F.3d 548, 555 (9th Cir. 2018).

from the crime." *Id.*, subsection B. They are the main point of contact for victims and witnesses "throughout the prosecution phase of the case." *Id.*

Orcutt is the Government's victim witness coordinator. Dkt. No. 149 at 2. Her interactions with Doe are described below.

***Phone calls.*** On July 10, 2023, Orcutt had an introductory phone call with Doe. Dkt. No. 129-1 at 2. After the call, Orcutt prepared and sent a memorandum to one of the Government's attorneys summarizing her conversation with Doe. Dkt. No. 149 at 2; Dkt. No. 129-1 at 2. According to the memorandum, Doe informed Orcutt that she "does not support the charges[,] . . . asked about how to amend or correct her initial statement," and opposed the imposition of a no contact order. Dkt. No. 129-1 at 2. Doe also asserted that Jefferson "strangles her consensually during sex and sometimes it gets rough," which she "told the medical responders . . . during her exam." *Id.* Finally, she mentioned that she has been communicating with Jefferson's attorney and investigator. *Id.* The Government produced this memorandum to Jefferson in discovery on August 23, 2024. Dkt. No. 81 at 5. Doe and Orcutt spoke on the phone on at least two other occasions, during which Doe "expressed her wish to have the no contact condition lifted." Dkt. No. 159-1 at 2. The first of these calls happened on August 16, 2023 "to make arrangements for [Doe] to address the court" and the second on November 8, 2023, "again about her wishes around lifting the no contact condition." *Id.*

***Texts.*** Doe and Orcutt also texted occasionally. On August 23, 2024, the Government produced text messages from the following dates: July 10, 2023, July 18, 2023, August 11, 2023, August 14, 2023, August 16, 2023, September 12, 2023, September 13, 2023, November 8, 2023, November 29, 2023, December 1, 2023, February 6, 2024, and August 6, 2024. Dkt. No. 81 at 5. The Government produced additional "victim witness cellphone screenshots" on August 30, 2024, Dkt. No. 130-2 at 3, though it is not clear what these are.

***Email.*** The Government represented to Jefferson that Doe and Orcutt did not communicate by email. Dkt. No. 159-1 at 2.

*(b) Jefferson subpoenas Orcutt for testimony and documents*

On August 29, 2024, Jefferson requested by email additional discovery related to Orcutt. Dkt. No. 129-2 at 2. After failing to reach an agreement, Jefferson subpoenaed Orcutt on October 31, 2024, seeking her testimony at trial and certain documents. Dkt. No. 129-5. The Court previously laid out the timeline of events in its prior order granting the Government leave to file this motion:

- August 29, 2024: Jefferson requests the following discovery related to Ms. Orcutt: any complaints lodged against her, and her credentials, licensing status, job description, and ethical obligations. Dkt. No. 129-2 at 2.

- September 12, 2024: The Government informs Jefferson that Ms. Orcutt is not going to be on its witness list and asks Jefferson to expound on why he believes her testimony and background materials are discoverable and material to Jefferson's case. Dkt. No. 129-3 at 2.

- October 22, 2024: The parties exchange positions regarding Jefferson's attempt to obtain discovery regarding Ms. Orcutt. Dkt. No. 129-4 at 2. Jefferson notes that he would "prefer to know these answers through the discovery process instead of trying to go a different route to get the same information." *Id.*

- October 31, 2024: A defense investigator emails the subpoena to Ms. Orcutt, copying the Government. Dkt. No. 129-5 at 2. The subpoena seeks any complaints that have been filed against Ms. Orcutt, along with her job description, credentials, licensing status, CV, and communications with and related to Doe. *See id.* at 3.

Dkt. No. 148 at 5. Although the subpoena seeks documents, it does not seek their pretrial production. *See* Dkt. No. 129-5 at 3 (directing Orcutt to bring the documents with her when she appears for testimony at trial).

After receiving the subpoena, the Government emailed to confirm Jefferson's position on Orcutt's relevance; Jefferson did not respond directly to that email, but in the Government's view, made his position clear in his motion for review of Judge Peterson's detention order, in which he

alleged that Orcutt prevented Doe from communicating with the Government's attorneys. Dkt. No. 149 at 3–4.

The Government's motion to quash followed. The Government objects only to the subpoena's request for documents, and does not object to the request for Orcutt's testimony at trial. *See generally* Dkt. No. 149.

2.  Legal Standard

Federal Rule of Criminal Procedure 17 governs the issuance of subpoenas in criminal proceedings. Rule 17(a) governs subpoenas to witnesses to testify at trial, while Rule 17(c) governs the issuance of subpoenas duces tecum and enables either party to obtain documents or other physical evidence. Fed. R. Crim. P. 17(a), (c). Rule 17(c) provides as follows:

> A subpoena may order the witness to produce any books, papers, documents, data, or other objects the subpoena designates. The court may direct the witness to produce the designated items in court before trial or before they are to be offered in evidence. When the items arrive, the court may permit the parties and their attorneys to inspect all or part of them.

Fed. R. Crim. P. 17(c)(1). Importantly, though, "Rule 17(c) was not intended as a discovery device, or to allow a blind fishing expedition seeking unknown evidence." *United States v. Reed*, 726 F.2d 570, 577 (9th Cir. 1984) (quotation marks omitted); *see also* Fed. R. Crim. P. 16 (governing discovery in criminal cases). Furthermore, subsection (3), which was designed to implement the Crime Victims' Rights Act's guarantee of a victim's "dignity and privacy," Fed. R. Crim. P. 17, advisory committee note to 2008 amendment; *see also* 18 U.S.C. § 3771(a)(8), provides that "a subpoena requiring the production of personal or confidential information about a victim may be served on a third party only by court order." Fed. R. Crim. P. 17(c)(3) ("Before entering the order and unless there are exceptional circumstances, the court must require giving notice to the victim so that the victim can move to quash or modify the subpoena or otherwise object.").

The Supreme Court in *United States v. Nixon* set forth a three-part test that the "moving

party" (i.e., the party seeking to enforce the subpoena) must meet: the documents sought must be relevant, admissible, and specifically identified. 418 U.S. 683, 700 (1974). Conclusory allegations of relevance are insufficient to meet the subpoena-seeking party's burden, *United States v. Eden*, 659 F.2d 1376, 1381 (9th Cir. 1981), and the "specificity and relevance elements require more than the title of a document and conjecture as to its contents," *United States v. Thompson*, No. CR19-159RSL, 2022 WL 834025, at *2 (W.D. Wash. Mar. 21, 2022) (quotation marks and citation omitted). Moreover, the documents sought cannot be "otherwise procurable reasonably in advance of trial by exercise of due diligence" and the subpoena cannot be "intended as a general 'fishing expedition.'" *Nixon*, 418 U.S. at 699; *see also Thompson*, 2022 WL 834025, at *2 ("[A] Rule 17(c) subpoena cannot be issued upon a mere hope that the desired documents would produce favorable evidence." (quotation marks and citation omitted)).

Rule 17(c)(2) confers discretion on the district court to quash a subpoena if compliance would be "unreasonable or oppressive." Fed. R. Crim. P. 17(c)(2). "A district court must grant a motion to quash a pretrial subpoena under Rule 17(c) unless the moving party can meet the [*Nixon*] requirements[.]" *In re Subpoena Issued to STF Prods., Inc., Producer of Am.'s Most Wanted, Am. Fights Back*, No. 06-10591, 2006 WL 3697679, at *1 (9th Cir. Dec. 15, 2006).

### 3. Jefferson's Subpoena Fails to Meet *Nixon*'s Requirements

Even assuming without deciding that Jefferson did not need leave of court before serving his subpoena,[3] the Court finds that he has not met his burden under *Nixon*'s three-factor test, and as a result, the Court must quash his subpoena. Because the subpoena seeks two fairly distinct categories of documents—(1) Orcutt's communications with or about Doe and (2) those related to

---

[3] *See* 2 Charles Alan Wright & Arthur R. Miller, Fed. Prac. & Proc. Crim. § 275 (4th ed. 2024); *United States v. Glenn*, 341 F.R.D. 217, 219 (N.D. Ohio 2022) (subpoena for victim's social media communications required court order and notice to victim under Federal Rule of Criminal Procedure 17(c)(3)); *United States v. Misquitta*, No. CRIM. 10-185, 2011 WL 1337098, at *1 (W.D. Pa. Apr. 7, 2011) (subpoena for all documents and communications relating to a victim's accounting and consulting project required court order and notice to victim under Rule 17(c)(3)).

Orcutt's employment as a victim witness coordinator—the Court analyzes them separately.

>   *(a) The request for Orcutt's communications with or "related to" Doe fails all three of* Nixon*'s requirements*

Jefferson's subpoena first seeks "[a]ll communications between Tracy Orcutt and Jane Doe" and "[a]ll communications between Tracy Orcutt and all others, including the prosecution team and law enforcement, related to Jane Doe." Dkt. No. 129-5 at 3. "This includes, but is not limited to all emails, phone calls, voicemails, text messages, written notes, or victim's statements received in any other format." *Id.* This request for all communications with or related to Doe fails all three of *Nixon*'s requirements. The most glaring deficiency is with its lack of specificity, so the Court begins there.

>   *(i)* Specificity

*Nixon* requires that the documents sought be specifically identified because "Rule 17(c) was not intended as a discovery device, or to 'allow a blind fishing expedition seeking unknown evidence.'" *Reed*, 726 F.2d at 577 (quoting *MacKey*, 647 F.2d at 901).

*United States v. Reyes* illustrates both ends of the specificity spectrum. 239 F.R.D. 591 (N.D. Cal. 2006). There, the defendant, a former chief executive officer of a publicly traded company, served Rule 17(c) subpoenas on two law firms that assisted with the company's internal investigation as well as on a third-party company. *Id.* at 596–97. All three entities moved to quash the respective subpoenas for failure to comply with Rule 17(c). *Id.* at 597. The court found that the subpoenas issued to the two law firms—which referred to specific summaries, notes, memoranda, and reports—satisfied the specificity requirement. *Id.* at 599–600. These requests were "neither improperly broad, nor overly vague; instead, [the defendant] demands access to a discrete set of existing written materials, within the possession of the subpoenaed parties, that pertain to events and conversations that actually occurred and relate to specific subject matter." *Id.* at 599. In

contrast, the subpoena issued to the third-party company failed the specificity requirement where the requests sought "all documents" relating to several of the company's policies and practices. *Id*. at 605–06. The court characterized the request as "enormous in scope" and "the quintessential fishing expedition," and noted that the subpoena "adopts a particular theory of defense and then casts a wide net with the goal of reeling in something to support it." *Id.*

Jefferson's broad request for Orcutt's communications falls into this second category. As noted above, the subpoena seeks "[a]ll communications between Tracy Orcutt and Jane Doe" and "[a]ll communications between Tracy Orcutt and all others, including the prosecution team and law enforcement, related to Jane Doe." Dkt. No. 129-5 at 3. And "communications . . . includes, but is not limited to all emails, phone calls, voicemails, text messages, written notes, or victim's statements received in any other format." *Id.* Rule 17(c) does not allow such a broad sweep premised on the suspicion that relevant and admissible documents might exist. *See Reed*, 726 F.2d at 577 (affirming district court's decision to quash Rule 17(c) subpoena for the city's arson files in part because the appellants "did not request specific documents, but sought entire arson investigation files"); *United States v. Zavala-Tapia*, No. CR. 2:09-297 WBS, 2010 WL 5330506, at *1 (E.D. Cal. Dec. 20, 2010) ("A subpoena signals a fishing expedition when it calls for 'any materials' regarding a particular subject and 'any other information' and defines 'material information' as 'including' but 'not limited to' the described information."); *see also, e.g.*, *United States v. McDonald*, No. 1:10-CR-29-JCC, 2010 WL 1734773, at *3 (E.D. Va. Apr. 26, 2010) (quashing subpoena for "any and all records notes, reports, memorandum, and/or documents and things in any form maintained by" a victim/witness program regarding a defendant as "unacceptably broad, unreasonable or oppressive"). [4]

---

[4] It is not clear how much of the information that Jefferson seeks actually exists. The Government has already produced

In addition to being non-specific about which documents he seeks, Jefferson also does not describe what he expects those not-yet-produced documents would show. Although Jefferson "cannot be expected to identify the materials he seeks in exacting detail," *Reyes*, 239 F.R.D. at 599, he must provide *some* detail as to what the materials might contain, otherwise "the court [is forced] to speculate as to the specific nature of their contents and its relevance," *United States v. Arditti*, 955 F.2d 331, 346 (5th Cir. 1992). Based on the lack of detail Jefferson provides, "it appears that [he is] attempting to use the subpoena to gain knowledge that he could not obtain under rule 16(a)(1), as much as to obtain evidence, i.e., that he was trying to use the subpoena duces tecum as a discovery device, which it is not." *Id.* (quotation marks and citation omitted).

*(ii)* Relevance

A party seeking to enforce a subpoena issued under Rule 17(c) must demonstrate "a sufficient likelihood" that the documents or information sought are "relevant to the offenses charged in the indictment." *Nixon*, 418 U.S. at 700. Evidence is relevant if it "has any tendency to make a fact more or less probable than it would be without the evidence" and "is of consequence in determining the action." Fed. R. Evid. 401.

As alluded to above, the main difficulty with assessing the purported relevance of Orcutt's not-yet produced communications related to Doe is that Jefferson does not describe what these communications are likely to show, "forcing the court to speculate as to the specific nature of their contents and its relevance." *Arditti*, 955 F.2d at 346. From the briefing, it appears that Jefferson's theory of relevance is as follows: he anticipates that Doe "will testify [at trial] that Mr. Jefferson

---

communications between Orcutt and Doe, including text messages and a memorandum describing their initial phone call. Jefferson appears to speculate that more exists that has not been produced, including materials related to Orcutt's communications "with a federal prosecutor on or about August 14, 2023, August 16, 2023, and August 6, 2024," and two phone calls between Doe and Orcutt on August 16, 2023 and November 8, 2023. Dkt. No. 159 at 6 (citing Dkt. Nos. 159-2, 159-3, and 159-4). In its reply, the Government states that "[a]ny statements by the victim were already disclosed." Dkt. No. 164 at 3.

ORDER ON GOVERNMENT'S MOTIONS TO QUASH TRIAL SUBPOENA AND TO ADMIT EVIDENCE - 10

acted in self-defense" and, if that happens, then "Orcutt's testimony and accompanying evidentiary materials are relevant to counteract a government campaign to target Mr. Jefferson as someone who tampered with a witness or imply that he did so." Dkt. No. 159 at 4–5. In other words, if Doe testifies as a defense-favorable witness, then Doe's statements to Orcutt shortly after the incident are relevant to rebutting a possible theory the Government might pursue to discredit her testimony as manipulated or coerced.

In its motion to quash, the Government argues that "the information Jefferson seeks is neither relevant nor material to any issue in the case," Dkt. No. 149 at 5, but does not elaborate on why the evidence sought is not relevant, instead focusing primarily on the admissibility and specificity prongs of the *Nixon* analysis, *see generally id.* In its reply, it concedes that "statements made by the victim to Ms. Orcutt *could* become relevant," but argues that "whether these statements become relevant should be reserved until testimony unfolds at trial." Dkt. No. 164 at 1 (emphasis in original).

The Court agrees with the Government. Although any not-yet-produced documents reflecting statements that Doe made to Orcutt (to the extent any exist) are potentially relevant to Doe's credibility, that depends on the nature of her testimony at trial. Jefferson seeks "to counteract a government campaign to target Mr. Jefferson as someone who tampered with a witness or imply that he did so," Dkt. No. 159 at 5, but the Government's motion to admit evidence suggests that it only wishes to pursue that theory if Doe "recant[s] or minimize[s] Jefferson's assaultive conduct at trial[.]" Dkt. No. 151 at 7. Whether this occurs will not be known until trial. The Court also notes that only a subset of the documents requested by the subpoena are potentially relevant— those communications reflecting statements Doe made to Orcutt. Jefferson's request for "all" communications "related to" Doe casts too wide a net, even if trial unfolds in the manner Jefferson suggests it will.

ORDER ON GOVERNMENT'S MOTIONS TO QUASH TRIAL SUBPOENA AND TO ADMIT EVIDENCE - 11

        *(iii)* Admissibility

Both Jefferson and the Government seem to agree that the only basis for admissibility of Orcutt's documents is for impeachment purposes. Dkt. No. 149 at 6–7; Dkt. No. 159 at 5–6. However, in the context of Rule 17(c), "[g]enerally, the need for evidence to impeach witnesses is insufficient to require its production in advance of trial." *Nixon*, 418 U.S. at 701. Ninth Circuit precedent confirms this. *United States v. Fields*, 663 F.2d 880, 881 (9th Cir. 1981) (seeking documents for impeachment purposes "is generally insufficient to justify the pretrial production of documents").[5]

        *(b) Jefferson fails to show that documents related to Orcutt's employment are relevant*

The second category of documents Jefferson's subpoena seeks relate more generally to Orcutt's employment as a government victim witness coordinator. These are:

> Tracy Orcutt's job description, credentials, and licensing status related to her employment as a victim witness coordinator. Tracy Orcutt's CV. All complaints that have been lodged against Tracy Orcutt in her current capacity.

Dkt. No. 129-5 at 3. With the exception of the request for complaints against Orcutt, these documents clear *Nixon*'s specificity hurdle. *United States v. Johnson*, No. CR 94-0048 SBA, 2008 WL 62281, at *4 (N.D. Cal. Jan. 4, 2008) (holding that a subpoena did not satisfy the specificity requirement because "the defendant does not know if there are any complaints against the arresting officers, he is merely seeking them in the event they do exist"). However, the Court finds that Jefferson has not met his burden to show that these documents are relevant.

---

[5] The Government cites an out-of-circuit case suggesting that "impeachment evidence may be ripe before trial if a witness is sure to testify and there is an indication of what the testimony will be." Dkt. No. 149 at 7 (citing *United States v. Libb*y, 432 F. Supp. 2d 26, 37–38 (D.D.C. 2006)). Based on this, Jefferson argues that "[t]he government concedes that 'impeachment evidence may be ripe before trial if a witness is sure to testify and there is an indication of what the testimony will be.'" Dkt. No. 159 at 5. However, *Libby* is at odds with *Fields*, the latter of which is binding precedent. *See also United States v. Pac. Gas & Elec. Co.*, No. 14-CR-00175-TEH-1 (MEJ), 2016 WL 1212091, at *6 n.4 (N.D. Cal. Mar. 28, 2016) (acknowledging criticism of *Fields* but noting that "[w]hile [district courts in other circuits] may freely reject the holdings of the Ninth Circuit, this Court may not.").

Jefferson makes no attempt to explain the relevance of Orcutt's employment materials aside from suggesting that he is again attempting to assert Jane Doe's rights under the Crime Victims' Rights Act. Dkt. No. 159 at 4 ("The government has blocked Doe's ability to talk with federal prosecutors since the initiation of the case, contrary to the Crime Victims' Rights Act."); *see also* Dkt. No. 129-4 at 2 ("[T]he victim statute and her ethical obligations required [Orcutt] to take a different course of action. For us to know for sure, we will need to learn about her licensing and ethical obligations, and that includes past complaints."). As the Court has previously explained, Jefferson does not have standing to do so. Dkt. No. 167 at 9; *see also* 18 U.S.C. § 3771(d)(1) ("A person accused of the crime may not obtain any form of relief under this chapter.").[6] To the extent Jefferson is being intentionally vague (for example, to avoid giving away his trial strategy), he had the option of seeking ex parte review. *See, e.g.*, *Thompson*, 2022 WL 834025, at *1 ("Parties may file motions for Rule 17(c) subpoenas ex parte and under seal to avoid disclosing defense strategy.").

Jefferson has not met his burden of showing that documents related to Orcutt's employment are relevant. *See Eden*, 659 F.2d at 1381 (conclusory allegations of relevance are insufficient). Because Jefferson has failed to meet his burden on relevance, he also fails to show that these materials are admissible.

For the reasons stated above, the Court grants the Government's motion to quash Jefferson's subpoena for documents. To the extent testimony at trial reveals relevant materials that have not yet been produced, Jefferson is free to request a subpoena for such documents.

---

[6] In addition, certain evidence in the record undermines Jefferson's contention. Dkt. No. 159-3 at 2 (Orcutt arranging for Jane Doe to talk to former AUSA Cooney at Jefferson's status hearing). Other evidence in the record also undermines an argument that Orcutt hid Doe's statements from the federal prosecutors. Dkt. No. 129-1 at 1 (memorandum from Orcutt to AUSA Tate London relaying that Jane Doe "did not support the charges and asked about how to amend or correct her initial statement" because "Officer Granger did not recount the course of events properly," and that Doe "state[d] that Mr. Jefferson strangles her consensually during sex and sometimes it gets rough," as "she told the medical responders . . . during her exam").

B.   **The Government's Motion to Admit Evidence is Denied as Premature**

The Government's second pretrial motion is its motion "to admit evidence of Jefferson's ongoing contact with the victim, Jane Doe, during the pendency of this case[.]" Dkt. No. 151 at 1. For the reasons explained below, the Court denies the Government's motion as premature.

"A trial judge ha[s] broad discretion to determine the admissibility of evidence[.]" *United States v. Ives*, 609 F.2d 930, 933 (9th Cir. 1979). Generally speaking, "evidentiary rulings should be deferred until trial so that questions of foundation, relevancy and potential prejudice may be resolved in proper context." *Vasquez v. Leprino Foods Co.*, No. 1:17-CV-00796-AWI-BAM, 2023 WL 2167245, at *1 (E.D. Cal. Feb. 22, 2023) (citing *Hana Fin., Inc. v. Hana Bank*, 735 F.3d 1158, 1162 n.4 (9th Cir. 2013)). Although ruling on the admissibility of evidence before trial "may save time, costs, effort and preparation, a court is almost always better situated during the actual trial to assess the value and utility of evidence." *Id.* (citing *Hana Fin., Inc.*, 735 F.3d at 1162 n.4).

That is the case here with the Government's motion. The relevance of the evidence it seeks to admit depends on the nature of Doe's testimony. Specifically, in the event that Doe "recant[s] or minimize[s] Jefferson's assaultive conduct at trial," then "evidence of her ongoing contact and relationship with Jefferson is necessary to provide the jury with context for Doe's testimony, to aid the jury in understanding dynamics at play in their relationship, and to provide the jury with information concerning Doe's personal interest in the outcome of the trial." Dkt. No. 151 at 7, 9. Jefferson responds that he "does not object to relevance of the evidence related to [he] and Doe attending movies together" if "the Court finds that Doe does 'recant or minimize,'" but asks "the Court to place clear limits on the evidence and resulting arguments." Dkt. No. 160 at 1–2, 4.

The Government has not provided any reason why this evidence should be admitted now, rather than waiting until after Doe has testified at trial. The Court prefers to wait for trial rather than providing what are essentially advisory opinions dependent on unknown testimony.

### III. CONCLUSION

For the reasons explained above, the Court GRANTS the Government's Motion to Quash Trial Subpoena. Dkt. No. 149. Although the Court quashes Jefferson's subpoena in its current form, this order does not preclude him from seeking Tracy Orcutt's testimony at trial, and he may re-issue a subpoena for her testimony pursuant to Federal Rule of Criminal Procedure 17(a). Separately, for the reasons stated above, the Court DENIES as premature the Government's Motion to Admit Evidence. Dkt. No. 151.

Dated this 19th day of December, 2024.

Lauren King
United States District Judge