UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　　　　　Plaintiff,<br><br>　v.<br><br>JOSEPH MICHAEL QUINCY JEFFERSON,<br><br>　　　　　　　　　Defendant. | CASE NO. 2:23-cr-00109-LK<br><br>ORDER GRANTING IN PART JEFFERSON'S MOTION FOR LEAVE TO FILE MOTION TO COMPEL DISCOVERY |

This matter comes before the Court on Jefferson's Motion for Leave to File Motion to Compel. Dkt. No. 171. For the reasons explained below, the Court grants the motion in part.

**I.　BACKGROUND**

The Government plans to try Jefferson before a jury for one count of Assault by Strangulation in violation of 18 U.S.C. §§ 113(a)(8) and 1153(a). Dkt. No. 13. Trial is scheduled to begin on January 13, 2025. Dkt. No. 115.

The pretrial motions deadline was August 19, 2024. Dkt. No. 53. The Government did not file any pretrial motions by that date. Jefferson filed motions in limine, a motion to dismiss the

1 indictment on due process grounds, and a motion to dismiss or cure the duplicitous indictment.

2 Dkt. Nos. 55–57. On September 3, 2024, the Court granted in part and denied in part Jefferson's

3 motions in limine. Dkt. No. 64. On September 9, 2024, the Court denied in part and deferred in

4 part Jefferson's motion to dismiss the indictment on due process grounds and denied as moot his

5 motion to dismiss or cure the duplicitous indictment. Dkt. No. 70. And on October 7, 2024, after

6 receiving supplemental briefing on the motion to dismiss the indictment on due process grounds,

7 the Court denied the portions of the motion upon which it had deferred ruling. Dkt. No. 105.

8 Because the parties' proposed supplemental briefing schedule left the Court with

9 insufficient time to complete the remaining pretrial tasks (including a potential evidentiary

10 hearing), on September 12, 2024 the Court *sua sponte* continued trial to October 21, 2024. Dkt.

11 No. 74. The Court did not permit any new pretrial motions in that order. *Id.* at 5. Jefferson then

12 filed a motion to continue trial. Dkt. No. 100. At the hearing on that motion, the parties indicated

13 that there may be a need to file additional pretrial motions. Dkt. No. 104. The Court cautioned that

14 because the pretrial motions deadline had passed, the parties would need leave of court to file any

15 belated pretrial motions.

16 On October 17, 2024, the Court continued trial to January 13, 2025. Dkt. No. 115. It

17 instructed the parties that any motion for leave to file additional pretrial motions must

18 "demonstrate good cause under Federal Rule of Criminal Procedure 12(c)(3) and address why the

19 underlying motion could not have been brought prior to the now-elapsed August 19, 2024 pretrial

20 motion deadline." *Id.* at 4.

21 On October 3, 2024, Jefferson was arrested for violating his bond conditions. Dkt. Nos.

22 96–97; Dkt. No. 120 at 2. After Jefferson's bond was revoked, he filed a motion for review of the

23 detention order. Dkt. No. 123. His reply brief regarding that motion was filed on November 18,

24 2024. Dkt. No. 141. That brief contained the following uncited proposition: "On the date of the

alleged offense, Mr. Jefferson told law enforcement that he had to defend himself because Doe pulled a knife on him and he feared she would stab him." Dkt. No. 141 at 5. On November 21, 2024, counsel for the Government emailed Jefferson's counsel to ask, "Where in discovery did Jefferson tell [law enforcement] that he had to defend himself because Doe pulled a knife on him and he feared she would stab him?" Dkt. No. 152-1 at 2.

In the meantime, Jefferson filed a motion for leave to submit another motion to dismiss the indictment based on due process violations. Dkt. No. 130. On November 25, the Court granted in part and denied in part that motion, holding that Jefferson could not file another motion to dismiss after the Court already ruled on his prior motion, but that he could file a motion for reconsideration addressing only those topics permitted by Local Criminal Rule 12(b)(13). Dkt. No. 147 at 4–5; *see also* LCrR 12(b)(13)(B) (A movant who seeks reconsideration "shall point out with specificity the matters which the movant believes were overlooked or misapprehended by the court, any new matters being brought to the court's attention for the first time, and the particular modifications being sought in the court's prior ruling."). Jefferson filed a motion for reconsideration on November 27, 2024, again asking the Court to either dismiss the indictment or issue an adverse inference jury instruction, and to hold a hearing to receive testimony from law enforcement before determining whether they acted in bad faith. Dkt. No. 152. The predominant theory in Jefferson's motion was that the Government's November 21 email amounted to an admission that "it did not know Mr. Jefferson told Officer Granger, shortly after he was arrested on April 8, 2023, that he feared Doe would stab him with a knife and he needed to act in self-defense or else get stabbed,"[1]

---

[1] This is not what Jefferson said. As he was handcuffed in the police car, he complained that his left hand was going numb and repeatedly asked officers to pull over and loosen the handcuffs. Dkt. No. 152-2. Officer Granger repeatedly told him that he would not pull over, but would look at the handcuffs once they arrived at their destination. *Id.* It is quite difficult to make out Jefferson's exact words on the video, but Jefferson then said something like:

> I'm fucking handcuffed man. Right on twisted fuckers. Got my hands cuffed and treat me like an asshole. Blow your brains up. Ow, fuck. . . . [3:18–4:25]

ORDER GRANTING IN PART JEFFERSON'S MOTION FOR LEAVE TO FILE MOTION TO COMPEL DISCOVERY - 3

thereby demonstrating that Officer Granger "acted in bad faith by successfully hiding key evidence from the government, including the knife, by sanitizing reports and failing to perform the most basic of investigations." Dkt. No. 152 at 1–2.

On December 3, 2024, one of Jefferson's attorneys emailed the Government with the following requests:

> I am reaching out to request any discovery that has been created as a result of texts, emails, or any other communication between or among the USAO (including Tate London), FBI, and Lummi Police, or any other law enforcement involved in the case.
>
> For example, if the FBI agents have reached out to the Lummi or other law enforcement about their investigation, those items are discoverable and should be provided to us. For example, any communications related to an investigation or lack of an investigation must be provided to the defense because they relate to bad faith. . . .
>
> [W]e would like to know what items of evidence the agents reviewed prior to obtaining the indictment and what investigatory steps they took, including whether they performed any investigation related to self defense. We would like to know all the times and dates they met with, talked with, texted, emailed, or communicated with Lummi police, including Officer Granger, for the case. We also want to know the earliest time and date they became involved in the case and investigation.

Dkt. No. 171-3 at 9. Jefferson's counsel followed up two days later with questions related to the November 21 email:

> I am following up on the prior email to learn when we will receive these materials because they also relate to the reply for the motion for reconsideration. . . . [In the Government's response to the motion for reconsideration,] [y]ou . . . complain that there was not proper citation [in the defense's reply brief] and state that is why you sent an email.

---

So what are you going to say, that I can't defend myself 'cause I got a knife pulled on me? [Unintelligible] I asked her to just stab me, go ahead. Doesn't matter, got your arrest. [Unintelligible] [8:15–8:50]

*Id.* Officer Granger then asked, "So you invoked *Miranda* – do you wanna talk now or no? 'Cause . . ." *Id.* at 8:51–8:56. Jefferson responded, "You got the question." *Id.* at 8:56–8:58. Officer Granger stated, "I'm not gonna talk to you if – if, you know – you're not going to waive those rights, right, those are your rights so you're not – to not talk to us so—" *Id.* at 9:01–9:09. Jefferson replied, "I said what I said." *Id.* at 9:09–9:10 Granger responded, "All right." *Id.* at 9:10. Jefferson then stated, "Motherfuckers always doing the same every time. If you're not the one to call the cops, it doesn't matter, right." *Id.* at 9:15–9:21.

ORDER GRANTING IN PART JEFFERSON'S MOTION FOR LEAVE TO FILE MOTION TO COMPEL DISCOVERY - 4

But that begs the question – [I]f you already knew where in the discovery Mr. Jefferson told Granger that he acted in self defense, then why ask? . . .

The defense did not receive the body camera evidence at Bates 815 until August 26, 2024. When did you receive the video? Did either of you watch the video prior to sending the email? Did the FBI agents watch the video prior to when you sent the email to the defense? Specifically, did you watch the portion of the video where Mr. Jefferson told Granger that he acted in self defense prior to sending the email?

Prior to sending us the email asking where to find Mr. Jefferson's self defense statement, did you reach out to anyone, including law enforcement, to learn if Mr. Jefferson made that statement?

Do you have any internal emails or notes, prior to sending your email request to us, indicating that you did or did not know where to find Mr. Jefferson's self defense claim? Did you have any conversations about where to find the self defense claim? If so, please provide those materials and content of conversations.

*Id.* at 8–9. The Government responded on December 6, 2024, informing Jefferson's counsel that the body camera video containing Jefferson's statement relating to self-defense was received by the prosecution on August 23, 2024, and relaying that

[t]he government did not include in its response answers to the questions you raise in the email below because the answers to these questions (such as if, when, and to what extent the government reviewed the video) are not relevant to the issue raised in the motion to reconsider. Moreover, the answers to these questions have no bearing upon the claim that Officer Granger allegedly hid evidence, evidence that both defense and the government have possessed since August.

Dkt. No. 171-3 at 8. Jefferson's counsel replied later that day:

If your email was truly an innocuous request—and my interpretation strains credulity and is completely off base—then you should be able to easily tell me that you already knew about the self defense claim prior to sending the email on Nov. 21 and you should have been able to make that representation in your response at dkt. 158. But you did not.

Again, did you know about the self defense claim in the video prior to sending the email? When was the first time you watched the entire video? When was the first time you realized the self defense claim was contained in the video? I will take your refusal to answer these simple questions as an admission that you did not know about the self defense claim prior to receiving the defense response to your Nov. 21 email.

ORDER GRANTING IN PART JEFFERSON'S MOTION FOR LEAVE TO FILE MOTION TO COMPEL DISCOVERY - 5

> Also, we would like additional discovery on why you did not receive Granger's body camera video until August 23, 2024. Who sent it to you? Why was it not received earlier? Who originally uploaded the body camera video and when did they upload it?

*Id.* at 7.

After additional back and forth, the Government substantively responded to some of Jefferson's requests on December 12, 2024. It confirmed that there are no "internal notes or emails related to when or whether [one of the Government attorneys] reviewed the video," *id.* at 5, but otherwise maintained its position that "answers to the questions [regarding] when and to what extent the government reviewed discovery are work product and not subject to disclosure," *id.* The Government also stated that its review of materials it had received revealed that "the original discovery folder" containing Lummi Nation Police Department materials, including Officer Granger's body camera video, was received by the Government on June 2, 2023. *Id.* at 3. Counsel for the Government "inquired within [her] office but [was] unable to explain why these video files were not produced while others were." *Id.* at 4. She added that "it is clear that it was an error on the part of the U.S. Attorney's Office, rather than the FBI or the Lummi Police Department and these files have been produced in discovery." *Id.*

The parties met and conferred on December 13, 2024. *Id.* at 2. Jefferson filed this motion for leave and the underlying motion to compel four days later, on December 17, 2024. Dkt. Nos. 171, 171-1.

## II. DISCUSSION

### A. Legal Standard

"Rule 12 of the Federal Rules of Criminal Procedure requires that a party show 'good cause' when making an untimely pre-trial motion." *United States v. Simmons*, No. 22-30134, 2023 WL 8016707, at *1 (9th Cir. Nov. 20, 2023) (quoting Fed. R. Crim. P. 12(c)(3)); *see also* Fed. R.

Crim. P. 12 Advisory Committee Note to the 2014 Amendment; LCrR 12(c)(1) ("No [pretrial] motion may be filed subsequent to [the deadline for such motions] except upon leave of court for good cause shown."); *United States v. Gonzalez*, No. CR 20-40 (BAH), 2020 WL 6158246, at *7 (D.D.C. Oct. 21, 2020) (a motion to compel is a pretrial motion). The determination of whether good cause exists "lies in the discretion of the district court." *United States v. Anderson*, 472 F.3d 662, 669 (9th Cir. 2006) (quoting *United States v. Tekle*, 329 F.3d 1108, 1113 (9th Cir. 2003)). Generally, "to obtain relief from waiver under Rule 12(e),[2] a party must present a legitimate explanation for his failure to raise the issue in a timely manner." *Anderson*, 472 F.3d at 670 (citing *United States v. Davis*, 663 F.2d 824, 831 (9th Cir. 1981)). Courts have found that good cause exists when a party could not have timely submitted the motion because of a late production of discovery materials, *United States v. Love*, No. 22-CR-75-1-JPS, 2023 WL 4702328, at *5–6 (E.D. Wis. July 24, 2023); an intervening change in the law, *United States v. Mulder*, 889 F.2d 239, 240 (9th Cir. 1989); or recently discovered evidence that was not readily available, *United States v. Allen*, 583 F. App'x 808, 809 (9th Cir. 2014). Conversely, an "inexcusably dilatory" motion does not establish good cause. *United States v. Wood*, 550 F.2d 435, 439 (9th Cir. 1976).

**B.    Jefferson's Motion for Leave is Granted in Part**

Jefferson seeks leave to file a motion to compel certain discovery, which he describes as "*Brady* evidence . . . which is relevant and material to cross examination of government witnesses" and "to challenging the investigation by law enforcement at trial[.]" Dkt. No. 171 at 1. Jefferson does not specifically identify what he wants the Court to compel; nowhere in his motion for leave, proposed motion, or reply brief does he specifically list the discovery items he would like the Court

---

[2] The 2014 amendments to Rule 12 moved the rule governing failure to timely raise pretrial motions from subsection (e) to (c)(3). Fed. R. Crim. P. 12 Advisory Committee Notes to the 2014 Amendment.

ORDER GRANTING IN PART JEFFERSON'S MOTION FOR LEAVE TO FILE MOTION TO COMPEL DISCOVERY - 7

to compel, and his proposed order simply commands the Government to "produce all *Brady* evidence." Dkt. No. 171-4.

It seems that at least some of the desired discovery is premised on the Government's November 21 email: Jefferson states that "[t]he defense did not know that the attorneys for the government were unaware that Mr. Jefferson told Granger that he was defending himself from being stabbed, until the government emailed the defense on November 21, 2024." Dkt. No. 171 at 2.[3] But the motion for leave also complains that "Officer Granger and the case agent left the self-defense statement out of all reports, affidavits, and grand jury testimony," and asserts that "[w]hen the agent first learned of this statement is relevant and material to challenging the federal agent's investigation," and "the continued failure by Granger and the agent to disclose this information to the attorneys for the government for nearly a year and half is material to the quality of the investigation and whether the investigation was done in good faith." *Id.*

The Government opposes Jefferson's motion, arguing that "[t]here is no good cause to consider the motion because Jefferson has had the body camera footage since August 26, 2024." Dkt. No. 176 at 2. The Court agrees that this precludes eleventh-hour efforts by the defense to compel information that Jefferson was alerted to in August 2024. For example, Jefferson has known since then that Officer Granger "left the self-defense statement out of all reports" and other materials. Dkt. No. 171 at 2. He has also known since then that the case agent "never mentioned in an affidavit or grand jury testimony that Doe told police she pulled a knife or that Mr. Jefferson said he thought he was going to be stabbed." Dkt. No. 171-1 at 9. Jefferson does not present a

---

[3] To be clear, the November 21 email does not establish that the prosecution was previously unaware of the self-defense statement. The Court takes Jefferson's argument to mean that he had no reason to *suspect* such lack of awareness until November 21. Furthermore, the Government's motion for leave to file a motion to exclude hearsay, Dkt. No. 174, does not demonstrate that it was previously unaware of the statement. All it shows is that the defense recently indicated that it intended to introduce the statement at trial, making the dispute ripe for the Court's consideration. *Id.* at 2.

ORDER GRANTING IN PART JEFFERSON'S MOTION FOR LEAVE TO FILE MOTION TO COMPEL DISCOVERY - 8

legitimate explanation for his failure to raise these issues in a timely manner. *Anderson*, 472 F.3d at 670 (citing *United States v. Davis*, 663 F.2d 824, 831 (9th Cir. 1981)).[4] Indeed, he conceded in earlier briefing that he chose not to raise the self-defense statement earlier "[f]or strategic reasons[.]" Dkt. No. 152 at 9 n.1. Jefferson also does not establish a duty on the part of the case agent or Officer Granger to relay the statement to the prosecution independent of production of the body camera video. Nor does Jefferson demonstrate how the Government's November 21 email triggered new questions regarding the case agent's "investigation, diligence, and knowledge of the case." Dkt. No. 171-1 at 9.[5]

However, to the extent Jefferson seeks information regarding the prosecution's knowledge (or lack of knowledge) of the body camera's contents, Jefferson had no reason to question such knowledge until the November 21 email. And although the Court previously held that the November 21 email did not constitute a new "fact" for the purposes of Jefferson's motion for reconsideration, Dkt. No. 170 at 4–6, that does not preclude him from seeking to explore potential defense theories arising from the email, such as whether the prosecution fulfilled its "affirmative duty to seek out *Brady* evidence[.]" Dkt. No. 171-1 at 10.

The remainder of the Government's arguments go to the merits of the underlying motion to compel. Dkt. No. 176 at 4–5. Although that motion may well be an exercise in futility, under these circumstances the Court prefers the benefit of full briefing before deciding the merits.

Based on the above, the Court finds that Jefferson has established good cause to file a motion to compel discovery related to the November 21 email, provided, however, that Jefferson

---

[4] It is also unclear how Officer Granger and the case agent "hid[] from the government" the self-defense statement, Dkt. No. 171-1 at 8, when the body camera video was produced to the prosecution in June 2023, Dkt. No. 171-3 at 3.

[5] Jefferson argues that "[w]hen the [case] agent watched the video is relevant and material to trial" and "would have been relevant to the pretrial motions already decided," but he does not explain why he did not seek discovery on this topic within a reasonable period of time from his receipt of the body camera video in August of this year. His strategic decision not to raise the statement and subsequent reconsideration of that decision do not establish good cause.

specifically identify what he seeks to compel. *See United States v. Mayhams*, No. 3:16-CR-127, 2018 WL 6524394, at *7 (M.D. Pa. Dec. 12, 2018) (denying motion to compel discovery without prejudice where defendant "failed to identify with any specificity items she is entitled to discover that ha[ve] not been produced by the Government").

### III.  CONCLUSION

For the reasons explained above, the Court GRANTS IN PART Jefferson's Motion for Leave to File Motion to Compel Discovery. Dkt. No. 171. By no later than 5:00 p.m. on December 31, Jefferson may file a motion to compel discovery related to the November 21 email that specifically identifies what he seeks to compel. The Government's response is due on January 2, 2025, and Jefferson's reply is due on January 6, 2025.

Dated this 31st day of December, 2024.

Lauren King
United States District Judge