UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>              Plaintiff,<br>    v.<br><br>JOSEPH MICHAEL QUINCY JEFFERSON,<br><br>              Defendant. | CASE NO. 2:23-cr-00109-LK<br><br>ORDER GRANTING IN PART AND DENYING IN PART JEFFERSON'S MOTION TO COMPEL DISCOVERY |

This matter comes before the Court on Defendant Joseph Michael Quincy Jefferson's Motion to Compel Discovery. Dkt. No. 191. For the reasons explained below, the motion is granted in part and denied in part.

## I. BACKGROUND

The Government plans to try Jefferson before a jury for one count of Assault by Strangulation in violation of 18 U.S.C. §§ 113(a)(8) and 1153(a). Dkt. No. 13. Trial is scheduled to begin on January 13, 2025. Dkt. No. 115.

The pretrial motions deadline was August 19, 2024. Dkt. No. 53. The Government did not

ORDER GRANTING IN PART AND DENYING IN PART JEFFERSON'S MOTION TO COMPEL DISCOVERY - 1

1   file any pretrial motions by that date. Jefferson filed motions in limine, a motion to dismiss the

2   indictment on due process grounds, and a motion to dismiss or cure the duplicitous indictment.

3   Dkt. Nos. 55–57. On September 3, 2024, the Court granted in part and denied in part Jefferson's

4   motions in limine. Dkt. No. 64. On September 9, 2024, the Court denied in part and deferred in

5   part Jefferson's motion to dismiss the indictment on due process grounds and denied as moot his

6   motion to dismiss or cure the duplicitous indictment. Dkt. No. 70. And on October 7, 2024, after

7   receiving supplemental briefing on the motion to dismiss the indictment on due process grounds,

8   the Court denied the portions of the motion upon which it had deferred ruling. Dkt. No. 105.

9       Because the parties' proposed supplemental briefing schedule left the Court with

10  insufficient time to complete the remaining pretrial tasks (including a potential evidentiary

11  hearing), on September 12, 2024 the Court *sua sponte* continued trial to October 21, 2024. Dkt.

12  No. 74. The Court did not permit any new pretrial motions in that order. *Id.* at 5. Jefferson then

13  filed a motion to continue trial. Dkt. No. 100. At the hearing on that motion, the parties indicated

14  that there may be a need to file additional pretrial motions. Dkt. No. 104. The Court cautioned that

15  because the pretrial motions deadline had passed, the parties would need leave of court to file any

16  belated pretrial motions.

17      On October 17, 2024, the Court continued trial to January 13, 2025. Dkt. No. 115. It

18  instructed the parties that any motion for leave to file additional pretrial motions must

19  "demonstrate good cause under Federal Rule of Criminal Procedure 12(c)(3) and address why the

20  underlying motion could not have been brought prior to the now-elapsed August 19, 2024 pretrial

21  motion deadline." *Id.* at 4.

22      On October 3, 2024, Jefferson was arrested for violating his bond conditions. Dkt. Nos.

23  96–97; Dkt. No. 120 at 2. After Jefferson's bond was revoked, he filed a motion for review of the

24  detention order. Dkt. No. 123. His reply brief regarding that motion was filed on November 18,

ORDER GRANTING IN PART AND DENYING IN PART JEFFERSON'S MOTION TO COMPEL DISCOVERY
- 2

1    2024. Dkt. No. 141. That brief contained the following uncited proposition: "On the date of the

2    alleged offense, Mr. Jefferson told law enforcement that he had to defend himself because Doe

3    pulled a knife on him and he feared she would stab him." *Id.* at 5. On November 21, 2024, counsel

4    for the Government emailed Jefferson's counsel to ask, "Where in discovery did Jefferson tell [law

5    enforcement] that he had to defend himself because Doe pulled a knife on him and he feared she

6    would stab him?" Dkt. No. 152-1 at 2.

7          In the meantime, Jefferson filed a motion for leave to submit another motion to dismiss the

8    indictment based on due process violations. Dkt. No. 130. On November 25, the Court granted in

9    part and denied in part that motion, holding that Jefferson could not file another motion to dismiss

10   after the Court already ruled on his prior motion, but that he could file a motion for reconsideration

11   addressing only those topics permitted by Local Criminal Rule 12(b)(13). Dkt. No. 147 at 4–5.

12   Jefferson filed a motion for reconsideration on November 27, 2024, again asking the Court to

13   either dismiss the indictment or issue an adverse inference jury instruction, and to hold a hearing

14   to receive testimony from law enforcement before determining whether they acted in bad faith.

15   Dkt. No. 152. The predominant theory in Jefferson's motion was that the Government's November

16   21 email amounted to an admission that "it did not know Mr. Jefferson told Officer Granger,

17   shortly after he was arrested on April 8, 2023, that he feared Doe would stab him with a knife and

18   he needed to act in self-defense or else get stabbed,"[1] thereby demonstrating that Officer Granger

19

20   _____

[1] This is not what Jefferson said. As he was handcuffed in the police car, he complained that his left hand was going numb and repeatedly asked officers to pull over and loosen the handcuffs. Dkt. No. 152-2. Officer Granger repeatedly

21   told him that he would not pull over, but would look at the handcuffs once they arrived at their destination. *Id.* It is quite difficult to make out Jefferson's exact words on the video, but Jefferson then said something like:

22       I'm fucking handcuffed man. Right on twisted fuckers. Got my hands cuffed and treat me like an
         asshole. Blow your brains up. Ow, fuck. . . . [3:18–4:25]
         So what are you going to say, that I can't defend myself 'cause I got a knife pulled on me?
23       [Unintelligible] I asked her to just stab me, go ahead. Doesn't matter, got your arrest. [Unintelligible]
         [8:15–8:50]

24   *Id.* Officer Granger then asked, "So you invoked *Miranda* – do you wanna talk now or no? 'Cause . . ." *Id.* at 8:51–
     8:56. Jefferson responded, "You got the question." *Id.* at 8:56–8:58. Officer Granger stated, "I'm not gonna talk to

ORDER GRANTING IN PART AND DENYING IN PART JEFFERSON'S MOTION TO COMPEL DISCOVERY
- 3

1  "acted in bad faith by successfully hiding key evidence from the government, including the knife,

2  by sanitizing reports and failing to perform the most basic of investigations." Dkt. No. 152 at 1–2.

3      On December 3, 2024, one of Jefferson's attorneys emailed the Government with the

4  following requests:

5      I am reaching out to request any discovery that has been created as a result of texts,
       emails, or any other communication between or among the USAO (including Tate
6      London), FBI, and Lummi Police, or any other law enforcement involved in the
       case.
7
       For example, if the FBI agents have reached out to the Lummi or other law
8      enforcement about their investigation, those items are discoverable and should be
       provided to us. For example, any communications related to an investigation or lack
9      of an investigation must be provided to the defense because they relate to bad
       faith. . . .
10
       [W]e would like to know what items of evidence the agents reviewed prior to
11     obtaining the indictment and what investigatory steps they took, including whether
       they performed any investigation related to self defense. We would like to know all
12     the times and dates they met with, talked with, texted, emailed, or communicated
       with Lummi police, including Officer Granger, for the case. We also want to know
13     the earliest time and date they became involved in the case and investigation.

14  Dkt. No. 171-3 at 9. Jefferson's counsel followed up two days later with questions related to the

15  November 21 email:

16     I am following up on the prior email to learn when we will receive these materials
       because they also relate to the reply for the motion for reconsideration. . . . [In the
17     Government's response to the motion for reconsideration,] [y]ou . . . complain that
       there was not proper citation [in the defense's reply brief] and state that is why you
18     sent an email.

19     But that begs the question – [I]f you already knew where in the discovery Mr.
       Jefferson told Granger that he acted in self defense, then why ask? . . .
20
       The defense did not receive the body camera evidence at Bates 815 until August
21     26, 2024. When did you receive the video? Did either of you watch the video prior
       to sending the email? Did the FBI agents watch the video prior to when you sent
22     the email to the defense? Specifically, did you watch the portion of the video where

23  _____

you if – if, you know – you're not going to waive those rights, right, those are your rights so you're not – to not talk
to us so—" *Id.* at 9:01–9:09. Jefferson replied, "I said what I said." *Id.* at 9:09–9:10. Granger responded, "All right."
24  *Id.* at 9:10. Jefferson then stated, "Motherfuckers always doing the same every time. If you're not the one to call the
cops, it doesn't matter, right." *Id.* at 9:15–9:21.

ORDER GRANTING IN PART AND DENYING IN PART JEFFERSON'S MOTION TO COMPEL DISCOVERY
- 4

1    Mr. Jefferson told Granger that he acted in self defense prior to sending the email?

2    Prior to sending us the email asking where to find Mr. Jefferson's self defense

3    statement, did you reach out to anyone, including law enforcement, to learn if Mr. Jefferson made that statement?

4    Do you have any internal emails or notes, prior to sending your email request to us, indicating that you did or did not know where to find Mr. Jefferson's self defense

5    claim? Did you have any conversations about where to find the self defense claim? If so, please provide those materials and content of conversations.

6

7    *Id.* at 8–9. The Government responded on December 6, 2024, informing Jefferson's counsel that

8    the body camera video containing Jefferson's statement relating to self-defense was received by

9    the prosecution on August 23, 2024, and relaying that

10    [t]he government did not include in its response answers to the questions you raise in the email below because the answers to these questions (such as if, when, and to what extent the government reviewed the video) are not relevant to the issue raised

11    in the motion to reconsider. Moreover, the answers to these questions have no bearing upon the claim that Officer Granger allegedly hid evidence, evidence that

12    both defense and the government have possessed since August.

13    Dkt. No. 171-3 at 8. Jefferson's counsel replied later that day:

14    If your email was truly an innocuous request—and my interpretation strains credulity and is completely off base—then you should be able to easily tell me that

15    you already knew about the self defense claim prior to sending the email on Nov. 21 and you should have been able to make that representation in your response at

16    dkt. 158. But you did not.

17    Again, did you know about the self defense claim in the video prior to sending the email? When was the first time you watched the entire video? When was the first

18    time you realized the self defense claim was contained in the video? I will take your refusal to answer these simple questions as an admission that you did not know

19    about the self defense claim prior to receiving the defense response to your Nov. 21 email.

20    Also, we would like additional discovery on why you did not receive Granger's

21    body camera video until August 23, 2024. Who sent it to you? Why was it not received earlier? Who originally uploaded the body camera video and when did

22    they upload it?

23    *Id.* at 7.

24    After additional back and forth, the Government substantively responded to some of

ORDER GRANTING IN PART AND DENYING IN PART JEFFERSON'S MOTION TO COMPEL DISCOVERY
- 5

1    Jefferson's requests on December 12, 2024. It confirmed that there are no "internal notes or emails

2    related to when or whether [one of the Government attorneys] reviewed the video," *id.* at 5, but

3    otherwise maintained its position that "answers to the questions [regarding] when and to what

4    extent the government reviewed discovery are work product and not subject to disclosure," *id.* The

5    Government also stated that its review of materials it had received revealed that "the original

6    discovery folder" containing Lummi Nation Police Department materials, including Officer

7    Granger's body camera video, was received by the Government on June 2, 2023. *Id.* at 3. Counsel

8    for the Government "inquired within [her] office but [was] unable to explain why these video files

9    were not produced while others were." *Id.* at 4. She added that "it is clear that it was an error on

10   the part of the U.S. Attorney's Office, rather than the FBI or the Lummi Police Department and

11   these files have been produced in discovery." *Id.*

12       On December 17, 2024, Jefferson filed a motion for leave and the underlying motion to

13   compel. Dkt. Nos. 171, 171-1. On December 31, 2024, The Court granted the motion for leave in

14   part, permitting him to file a motion to compel but requiring that it be limited to "information

15   regarding the prosecution's knowledge (or lack of knowledge) of the body camera's contents" and

16   that it specifically describe what material the defense sought to compel. Dkt. No. 187 at 9–10.

17   Jefferson filed his motion to compel that same day, identifying four discovery requests. Dkt. No.

18   191 at 5–6. In its opposition brief, the Government noted that it had since "disclosed information

19   pertaining to item Nos. 2 and 3," mooting part of the motion to compel. Dkt. No. 201 at 1. What

20   remains, according to the Government, are requests seeking "when the prosecutors first learned of

21   Jefferson's self-defense claim, when the government first watched Officer Granger's body worn

22   video, and when the government spoke to Officer Granger about Jefferson's self-defense claims."

23   *Id.* Jefferson replied that the Government's responses to Requests 2 and 3 were "devoid of nearly

24   all meaning" and did not "meet the spirit or obligations under *Brady*." Dkt. No. 213 at 1.

ORDER GRANTING IN PART AND DENYING IN PART JEFFERSON'S MOTION TO COMPEL DISCOVERY
- 6

## II.   DISCUSSION

**A.      Legal Standards**

    1.   Brady

Under *Brady* and its progeny, the government is obligated to turn over evidence that is (1) favorable to the defendant, (2) material to either guilt or punishment, and (3) within the government's possession. *Kyles v. Whitley*, 514 U.S. 419, 432 (1995); *Brady v. Maryland*, 373 U.S. 83, 87 (1963).

*Favorability.* "Any evidence that would tend to call the government's case into doubt is favorable for *Brady* purposes." *Milke v. Ryan*, 711 F.3d 998, 1012 (9th Cir. 2013). Evidence is favorable so long as it is "*potentially* exculpatory or impeaching." *United States v. Olsen*, 704 F.3d 1172, 1181 (9th Cir. 2013) (emphasis in original).

*Materiality.* The majority of *Brady* cases arise after conviction, where the test for materiality is whether "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *United States v. Cano*, 934 F.3d 1002, 1022 (9th Cir. 2019). When pretrial disclosure is sought, however, *Brady*'s materiality standard has been collapsed into the favorability standard. The Ninth Circuit has recently reaffirmed that the "materiality standard usually associated with *Brady* should not be applied to pretrial discovery of exculpatory materials" and instead the proper test is "whether the evidence is favorable to the defense, i.e., whether it is evidence that helps bolster the defense case or impeach the prosecutor's witnesses." *United States v. Cloud*, 102 F.4th 968, 979 (9th Cir. 2024). It has also emphasized that "[a] trial prosecutor's speculative prediction about the likely materiality of favorable evidence . . . should not limit the disclosure of such evidence, because it is just too difficult to analyze before trial whether particular evidence ultimately will prove to be 'material' after trial." *Olsen*, 704 F.3d at 1183 n.3.

1    *Possession.* Finally, *Brady* does not oblige the government "to produce information which

2    it does not possess or of which it is unaware." *Sanchez v. United States*, 50 F.3d 1448, 1453 (9th

3    Cir. 1995). "Possession" has been defined broadly to include information "held by members of the

4    prosecution team, such as investigating agents" or "held by other executive branch agencies [if]

5    the prosecutor has 'knowledge of and access to' the evidence." *See United States v.*

6    *Alahmedalabdaloklah*, 94 F.4th 782, 844 (9th Cir. 2024), *cert. denied,* No. 24-125, 2024 WL

7    5011718 (U.S. Dec. 9, 2024). "The prosecutor is deemed to have 'knowledge' not only of

8    information that the prosecutor personally knows, but also of information that the prosecutor could

9    have learned." *Id.* (cleaned up). In some cases, the prosecutor's *Brady* obligation extends to

10   information held by state agencies and officers who participated in the investigation, *see United*

11   *States v. Price*, 566 F.3d 900, 903, 908–09 (9th Cir. 2009), but does not necessarily extend to

12   information held by tribal law enforcement, *see United States v. Stoneman*, No. CR 09-30101-

13   RAL, 2010 WL 2710477, at *1–2 (D.S.D. July 8, 2010) (observing that "the relationship between

14   the prosecutor and [state] law enforcement . . . does not mirror the relationship between the federal

15   prosecutor and the tribal law enforcement").

16        2.  Rule 16

17        Under Rule 16, "the government must, upon request, turn over any documents 'within the

18   government's possession, custody, or control' that are 'material to preparing the defense.'" *United*

19   *States v. Cano*, 934 F.3d 1002, 1022 (9th Cir. 2019) (quoting Fed. R. Crim. P. 16(a)(1)(E)(i)). "The

20   defendant must make a threshold showing of materiality, which requires a presentation of facts

21   which would tend to show that the Government is in possession of information helpful to the

22   defense." *Id.* (quotation marks removed). Because "information that is not exculpatory or

23   impeaching may still be relevant to developing a possible defense, Rule 16 is broader than *Brady*."

24   *Id.* (cleaned up). Still, Rule 16 does not permit a "far reaching fishing expedition," *United States*

ORDER GRANTING IN PART AND DENYING IN PART JEFFERSON'S MOTION TO COMPEL DISCOVERY
- 8

1  *v. Wolfenbarger*, No. 16-CR-00519-LHK-1, 2019 WL 3037590, at *9 (N.D. Cal. July 11, 2019),

2  and "[n]either a general description of the information sought nor conclusory allegations of

3  materiality suffice," *United States v. Santiago*, 46 F.3d 885, 894 (9th Cir. 1995) (citation omitted).

4  "The possession element of *Brady* is treated as coextensive with that of Rule 16." *Cano*, 934 F.3d

5  at 1023 n.16.

6          Finally, Rule 16(a)(2) limits the scope of discoverable materials by "exempt[ing] from

7  discovery the work product of Government attorneys and agents made in connection with the

8  case's investigation." *United States v. Armstrong*, 517 U.S. 456, 456 (1996). This government

9  work product privilege extends to "the internal product of local police work later provided to the

10  federal government." *United States v. Martinez*, 657 F.3d 811, 819 (9th Cir. 2011). Rule 16(a)(2)

11  does not apply to disclosures required under *Brady*. *See* 2 Charles A. Wright et al., Federal Practice

12  & Procedure § 256 (4th ed.); Wayne LaFave et al., 6 Criminal Procedure § 24.3(b) (4th ed.).

13  **B.    Jefferson's Motion to Compel Discovery is Granted in Part**

14          Jefferson's motion to compel is granted in part. The Court finds that the requests focused

15  on federal law enforcement's investigation (Request 2 and part of Request 3) call for *Brady*

16  material under the specific circumstances present in this case, but that neither *Brady* nor Rule 16

17  entitles Jefferson to discovery on his remaining requests, which largely seek information about the

18  federal prosecutors' review and knowledge of evidence.

19          Jefferson's four discovery requests are as follows. He seeks information about:

20      1.  The date the prosecutors learned of the self-defense claim that Mr. Jefferson
            made to Granger on body camera; and the date that the prosecutors watched the
21          entire body camera video where Mr. Jefferson made to the statements to
            Granger (if different dates).
22
        2.  The date the case agent or any FBI agent learned of the self-defense claim that
23          Mr. Jefferson made to Granger on body camera; and the date that the case agent
            or any FBI agent watched the entire body camera video where Mr. Jefferson
24          made the statements to Granger (if different dates).

ORDER GRANTING IN PART AND DENYING IN PART JEFFERSON'S MOTION TO COMPEL DISCOVERY
- 9

3.  When the prosecution, case agent, and/or any other FBI agent spoke to Granger about any claims of self-defense or threats from a knife.

4.  Whether and when the prosecution sought out such information from Granger in accordance with *Brady* and progeny, and whether and when Granger denied that any such statements were made or that any such evidence existed or failed to answer responsively.

Dkt. No. 191 at 5–6.

Jefferson argues that the answers to the above questions "are material to how successfully the information was hidden from the government and agents, how inadequate the federal investigation was by agents, and the extent of the *Brady* violations." *Id.* at 9. The Government appears to concede the appropriateness of Jefferson's inadequate investigation defense, but argues that the specific discovery Jefferson seeks—particularly the discovery regarding the prosecutors' review and knowledge of evidence—"ha[s] no bearing" on that defense (or his self-defense claim). Dkt. No. 201 at 4–5.

1.  The Government's Responses to Request 2 and Part of Request 3 Are Inadequate

After Jefferson filed his motion to compel, the Government responded to the portions of his discovery demand focused on the federal case agents' investigation, tacitly conceding that this discovery falls within *Brady*'s scope.[2] Dkt. No. 213-1 at 2–3. The specific requests at issue are:

2.  The date the case agent or any FBI agent learned of the self-defense claim that Mr. Jefferson made to Granger on body camera; and the date that the case agent or any FBI agent watched the entire body camera video where Mr. Jefferson made the statements to Granger (if different dates).

3.  When the . . . case agent, and/or any other FBI agent spoke to Granger about any claims of self-defense or threats from a knife.

The Court agrees that these requests call for *Brady* materials under the specific circumstances present in this case. First, the information is within the Government's possession.

---

[2] The Government's discovery letter noted that it would provide responsive information to Request 2 and part of Request 3, but nothing else because the remaining information was "not subject to disclosure under *Brady*." Dkt. No. 213-1 at 2.

ORDER GRANTING IN PART AND DENYING IN PART JEFFERSON'S MOTION TO COMPEL DISCOVERY
- 10

1    *Alahmedalabdaloklah*, 94 F.4th at 844 ("possession" includes information "held by members of

2    the prosecution team, such as investigating agents"). Second, given Jefferson's plan to contest the

3    adequacy of law enforcement's investigation, particularly regarding the failure to collect or

4    adequately investigate defense-favorable and/or self-defense evidence, and given that the

5    Government has indicated that it believes the information is *Brady* material,[3] the Court finds that

6    these requests are within *Brady*'s ambit. *See United States v. Howell*, 231 F.3d 615, 625 (9th Cir.

7    2000) ("[I]nformation which might 'have raised opportunities to attack the thoroughness and even

8    good faith of the investigation' constitutes exculpatory, material evidence." (cleaned up; quoting

9    *Kyles v. Whitley*, 514 U.S. 419, 445 (1995))); *see also United States v. Sager*, 227 F.3d 1138, 1145

10   (9th Cir. 2000) ("Details of the investigatory process" might affect law enforcement's credibility

11   "and, perhaps more importantly, the weight to be given to evidence produced by [the]

12   investigation."). And "[w]hile the jury may very well ultimately find [this] defense unconvincing,

13   *Brady* requires the Government to provide [a criminal defendant] the information to present that

14   defense." *United States v. Balwani*, No. 5:18-CR-00258-EJD-2, 2022 WL 1720081, at *2 (N.D.

15   Cal. May 27, 2022). To be sure, as Government notes, Jefferson can elicit testimony from the case

16   agents on these points at trial, Dkt. No. 201 at 2, but it cannot avoid its *Brady* obligation by

17   asserting that otherwise favorable and material evidence in its possession would be cumulative.

18   *Benn v. Lambert*, 283 F.3d 1040, 1057–58 (9th Cir. 2002).

19        Having established the Government's obligation to respond, the Court turns to the

20   sufficiency of the Government's existing responses, which Jefferson argues are vague and not

21   within the spirit of *Brady.* Dkt. No. 213 at 1; Dkt. No. 213-1.

22

23   _____

[3] It is primarily the Government's role, not the Court's, to decide prospectively what information is material and must be disclosed under *Brady*. *United States v. Lucas*, 841 F.3d 796, 807 (9th Cir. 2016). Here, the Government chose to respond and provide responses to Requests 2 and part of Request 3, signaling that it had decided the discovery was encompassed by *Brady*.

24

ORDER GRANTING IN PART AND DENYING IN PART JEFFERSON'S MOTION TO COMPEL DISCOVERY - 11

The Government provided discovery with respect to FBI Special Agents Howe and Leavitt. As to Request 2, the Government responded that Agent Howe "reviewed the body worn videos in June 2023" but "does not recall which specific videos he viewed at that time and does not know the exact date he learned of Jefferson's self-defense claim." Dkt. No. 213-1 at 2. Similarly, Agent Leavitt "watched portions of Officer Granger's body camera video, but she does not know the date she watched the portion of the video where Jefferson made statements to Granger" and "does not know the exact date she learned of the self-defense claim." *Id.* at 3.

As to Request 3, "Agent Howe does not recall having communications with Officer Granger about Jefferson's self-defense claims or threats from a knife" and "Agent Leavitt did not speak to Officer Granger about Jefferson's self-defense claims or threats from a knife." *Id.* at 2–3.

The Court agrees with Jefferson that the Government's responses to Request 2 are insufficient. Although the case agents are not required to provide information not known to them, they must make a diligent effort to provide meaningful answers to the questions and outline their efforts if they are unable to obtain the sought after information. If the agents truly cannot recall when they watched the video or provide a window of time when they watched it, they should describe any steps they took to refresh their recollection. Accordingly, the Government must supplement its responses to Request 2 with more specific information.

With respect to Request 3, the Government's response directly addresses when, if ever, the case agent or any other FBI agent spoke to Granger about any claims of self-defense or threats from a knife.

2. Jefferson's Remaining Requests Do Not Implicate *Brady*

Jefferson's remaining discovery requests do not implicate *Brady*. These are:

1. The date the prosecutors learned of the self-defense claim that Mr. Jefferson made to Granger on body camera; and the date that the prosecutors watched the entire body camera video where Mr. Jefferson made to the statements to

ORDER GRANTING IN PART AND DENYING IN PART JEFFERSON'S MOTION TO COMPEL DISCOVERY - 12

Granger (if different dates).

3. When the prosecution . . . spoke to Granger about any claims of self-defense or threats from a knife.

4. Whether and when the prosecution sought out such information from Granger in accordance with *Brady* and progeny, and whether and when Granger denied that any such statements were made or that any such evidence existed or failed to answer responsively.[4]

These discovery requests, taken as a whole, seek answers to two questions: (1) when (or whether) the federal prosecutors learned about Jefferson's self-defense statement, including whether they sought it out from Officer Granger, and (2) whether Officer Granger chose to affirmatively alert the prosecution of Jefferson's self-defense statement outside of turning over his body camera video containing the statement. Neither is relevant to establishing that tribal or federal law enforcement performed an inadequate investigation, particularly because these "investigations are conducted by federal agents and local police authorities, not Assistant United States Attorneys." Dkt. No. 201 at 2.

Jefferson's theory is that if the federal prosecutors were unaware of his self-defense statement to Officer Granger, "it means either (1) that they did seek out *Brady* evidence but all their conversations with law enforcement revealed nothing about self-defense, which is critical information for cross examination at trial and for a bad-faith analysis, or (2) [they] never sought *Brady* evidence and never asked the officers involved about exculpatory or impeachment evidence, all while the officers didn't voluntarily provide the information for a year and a half." *Id.* at 11.

As an initial matter, these requests are primarily aimed at showing that the prosecutors did not comply with their *Brady* obligations, which is not the same thing as showing that the underlying investigation was inadequate. In any case, even assuming that the prosecution was

---

[4] As to Request 4 specifically, it is at best unclear whether federal prosecutors' *Brady* obligation extends to information in the possession of tribal law enforcement, *see Stoneman*, 2010 WL 2710477, at *1–2, and Jefferson cites nothing suggesting that it does.

ORDER GRANTING IN PART AND DENYING IN PART JEFFERSON'S MOTION TO COMPEL DISCOVERY
- 13

unaware that a piece of evidence in its possession contained an exculpatory self-defense statement, Jefferson's "if, then" scenarios do not logically follow. The underlying body camera footage has been in Jefferson's hands for several months now,[5] and the prosecutors' hypothetical lack of awareness of this self-defense statement is not itself *Brady* violation, nor does it imply a wholesale abdication of their *Brady* obligations like Jefferson suggests. It also sheds very little, if any, light on their conversations with federal or tribal law enforcement about self-defense. At most it suggests that the prosecutors and law enforcement did not discuss this particular statement, which has a speculative connection (at best) to the adequacy of the underlying investigation, Officer Granger's credibility, and the federal prosecutors' compliance with *Brady.*

This leads to Jefferson's next theory as to why this discovery is *Brady* material, which is equally unpersuasive. He argues that, assuming Officer Granger never affirmatively disclosed the existence of Jefferson's self-defense statement to the prosecutors, then "[t]his omission from all conversations is *Brady* evidence and goes directly to Granger's credibility as a witness and lead officer in the investigation." Dkt. No. 191 at 10 (emphasis omitted). The Court disagrees. The fact that Officer Granger affirmatively disclosed (or failed to disclose) Jefferson's self-defense statement to the prosecution does not implicate the adequacy of the underlying investigation by tribal law enforcement, and a failure to affirmatively disclose that information is not relevant to Officer Granger's bias or credibility because Jefferson has not established "a duty on the part of . . . Officer Granger to relay the statement to the prosecution independent of production of the body camera video." Dkt. No. 187 at 9. In the alternative, Jefferson argues that if Officer Granger "did disclose the self-defense claim to the government prior to November 21, 2024, the defense has a right to that supplemental report and factual information, as well as why exculpatory information

---

[5] As the Court has held previously, the Government's late production of this evidence is not a *Brady* violation. Dkt. No. 170 at 6–7 n.3.

ORDER GRANTING IN PART AND DENYING IN PART JEFFERSON'S MOTION TO COMPEL DISCOVERY
- 14

1    was not previously disclosed." Dkt. No. 191 at 10–11. Granger disclosed the self-defense statement

2    to the prosecution by turning over his body camera video in June 2023 or earlier, Dkt. No. 171-3

3    at 3–4, and at that point, the prosecution was deemed to have knowledge of its contents,

4    *Alahmedalabdaloklah*, 94 F.4th at 844. Jefferson does not explain why he has a right to further

5    disclosures of the same information by Granger to the prosecution or why such disclosures are

6    exculpatory.

7         Ultimately, *Brady*'s "animating purpose . . . is to preserve the fairness of criminal trials."

8    *Morris v. Ylst*, 447 F.3d 735, 742 (9th Cir. 2006). This is not the type of evidence that, without it,

9    would deprive Jefferson of a fair trial. Rather, the discovery sought is best characterized as seeking

10   the federal prosecutors' "impressions of the evidence," which "are not discoverable under *Brady*

11   unless they contain underlying exculpatory facts," *id.*, and as discussed, the relevant underlying

12   exculpatory fact (Jefferson's self-defense statement) has already been produced here.

13         3.   <u>Rule 16 Does Not Entitle Jefferson to Discovery on His Remaining Requests</u>

14        Finally, Jefferson's arguments fare no better under Rule 16. As described above, that rule

15   does not authorize discovery of any and all information. Instead, Rule 16 authorizes discovery of

16   specifically enumerated information in the Government's possession that is "material to preparing

17   the defense." Fed. R. Civ. P. 16(a)(1)(E)(i). And although it is broader than *Brady* in some ways,

18   it is narrower in others. Relevant here, the Supreme Court has held that information sought for

19   reasons unrelated to responding to the government's case in chief is not "material to the preparation

20   of the defendant's defense." *Armstrong*, 517 U.S. at 462 (discussing former Rule 16(a)(1)(C), now

21   rule 16(a)(1)(E)). The Supreme Court used a "sword" and "shield" metaphor to illustrate Rule 16's

22   parameters; discovery sought for the purpose of "challenging the prosecution's conduct of the

23   case" (a sword) is not permissible, whereas discovery sought to "refute the Government's

24   arguments that the defendant committed the crime charged" (a shield) is permissible. *Id.*; *see also*

ORDER GRANTING IN PART AND DENYING IN PART JEFFERSON'S MOTION TO COMPEL DISCOVERY
- 15

1  *United States v. Chon*, 210 F.3d 990, 995 (9th Cir. 2000) (citing *Armstrong*, denying discovery

2  request to bolster "sword claims" not relevant to defending against government's case in chief on

3  theft and conversion). The Ninth Circuit narrowed *Armstrong* to its facts in *United States v. Soto-*

4  *Zuniga*, 837 F.3d 992, 1000 (9th Cir. 2016), but reaffirmed *Chon*'s holding (which relied on

5  *Armstrong*) prohibiting discovery under Rule 16 that is "'considerably broader' than [what is]

6  relevant to the specific charges against the defendants," *id.* at 1001. The Court finds that Jefferson's

7  remaining requests, which are focused primarily on the prosecutors' review and knowledge of the

8  case, fall into this category. And *Armstrong* aside, the Court finds that the given the speculative

9  nature of these discovery requests, they are the sort of fishing expedition that courts routinely deny.

10  *See Wolfenbarger*, 2019 WL 3037590, at *9.

### III. CONCLUSION

12  For the reasons explained above, the Court GRANTS IN PART and DENIES IN PART

13  Jefferson's Motion to Compel Discovery. Dkt. No. 191. The Government is ordered to provide

14  supplemental responses to Jefferson on Request 2 by 2:00 p.m. on Friday, January 10, 2025.

15  Dated this 8th day of January, 2025.

Lauren King
United States District Judge