UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>JOSEPH MICHAEL QUINCY JEFFERSON,<br><br>Defendant. | CASE NO. 2:23-cr-00109-LK<br><br>ORDER ON GOVERNMENT'S MOTION TO QUASH TRIAL SUBPOENA AND MOTION FOR EX PARTE REVIEW |

This matter comes before the Court on the Government's Motion to Quash Trial Subpoena, Dkt. No. 226, and Motion for Ex Parte Review, Dkt. No. 238.

I. **BACKGROUND**

The Government plans to try Jefferson before a jury for one count of Assault by Strangulation in violation of 18 U.S.C. §§ 113(a)(8) and 1153(a). Dkt. No. 13. Trial is scheduled to begin on January 13, 2025. Dkt. No. 115.

On January 2, 2025, Jefferson served a subpoena for documents on the Lummi Office of the Reservation Attorney. Dkt. No. 226 at 1–2. The Government learned of the subpoena's

ORDER ON GOVERNMENT'S MOTION TO QUASH TRIAL SUBPOENA AND MOTION FOR EX PARTE REVIEW - 1

existence on January 8, 2025, and filed this motion to quash the next day. *Id.* at 2. The subpoena seeks the following records related to Officer Granger:

1. All complaints filed against Officer Granger;

2. Officer Granger's entire personnel file;

3. All internal investigation records related to said complaints/incidents;

4. All disciplinary findings against Officer Granger, including, but not limited to, sustained charges, recommendations for discipline, recommendations for supervisory intervention, and all "Investigation Summary Reports" and "Investigation Summary Reports" related to complaints and/or allegations of misconduct, and all subsequent reports; and

5. Any correspondence between parties regarding these complaints/incidents, including, but not limited to, correspondence between Officer Granger's trainers, watch commanders, precinct commanders, and Bellingham Police Department's oversight committee/professional accountability department.

Dkt. No. 226 at 2; Dkt. No. 226-1 at 3.

After the Government filed the motion to quash, it agreed to request a copy of Officer Granger's employment application from the Office of the Reservation Attorney. Dkt. No. 238 at 1. The Government was informed that Lummi Nation no longer maintains the employment application; however, Lummi Nation did provide the Government with additional information in connection with the inquiry. *Id.* Although the Government avers that this additional information is not discoverable, it sought the Court's *in camera* review of those materials to determine whether any need to be disclosed pursuant to *Giglio v. United States*, 405 U.S. 150 (1972). *Id.* at 1–2. Jefferson did not oppose the motion for ex parte, *in camera* review of those materials, and the Court granted it. Dkt. No. 241.

On January 11, 2025, Jefferson filed a notice "withdrawing [his] subpoena to the [Lummi Office of the Reservation Attorney] seeking the personnel file for Officer Granger," which "renders the government's motion to quash the subpoena at docket 226 moot." Dkt. No. 244 at 2. However, because the request for personnel files is just one of the subpoena's five requests, the

ORDER ON GOVERNMENT'S MOTION TO QUASH TRIAL SUBPOENA AND MOTION FOR EX PARTE REVIEW - 2

Court does not find it clear that Jefferson's notice moots the entirety of subpoena and, by extension, the Government's motion to quash it.

## II.    DISCUSSION

**A.    The Government's Motion to Quash is Granted**

1.  <u>Legal Standard</u>

Federal Rule of Criminal Procedure 17 governs the issuance of subpoenas in criminal proceedings. Rule 17(c) governs the issuance of subpoenas duces tecum and enables either party to obtain documents or other physical evidence. Fed. R. Crim. P. 17(a), (c). Rule 17(c) provides as follows:

> A subpoena may order the witness to produce any books, papers, documents, data, or other objects the subpoena designates. The court may direct the witness to produce the designated items in court before trial or before they are to be offered in evidence. When the items arrive, the court may permit the parties and their attorneys to inspect all or part of them.

Fed. R. Crim. P. 17(c)(1). Importantly, though, "Rule 17(c) was not intended as a discovery device, or to allow a blind fishing expedition seeking unknown evidence." *United States v. Reed*, 726 F.2d 570, 577 (9th Cir. 1984) (quotation marks omitted); *see also* Fed. R. Crim. P. 16 (governing discovery in criminal cases).

The Supreme Court in *United States v. Nixon* set forth a three-part test that the "moving party" (i.e., the party seeking to enforce the subpoena) must meet: the documents sought must be relevant, admissible, and specifically identified. 418 U.S. 683, 700 (1974). Conclusory allegations of relevance are insufficient to meet the subpoena-seeking party's burden, *United States v. Eden*, 659 F.2d 1376, 1381 (9th Cir. 1981), and the "specificity and relevance elements require more than the title of a document and conjecture as to its contents," *United States v. Thompson*, No. CR19-159RSL, 2022 WL 834025, at *2 (W.D. Wash. Mar. 21, 2022) (quotation marks and citation omitted). Moreover, the documents sought cannot be "otherwise procurable reasonably in advance

of trial by exercise of due diligence" and the subpoena cannot be "intended as a general 'fishing expedition.'" *Nixon*, 418 U.S. at 699; *see also Thompson*, 2022 WL 834025, at *2 ("[A] Rule 17(c) subpoena cannot be issued upon a mere hope that the desired documents would produce favorable evidence." (quotation marks and citation omitted)).

Rule 17(c)(2) confers discretion on the district court to quash a subpoena if compliance would be "unreasonable or oppressive." Fed. R. Crim. P. 17(c)(2). "A district court must grant a motion to quash a pretrial subpoena under Rule 17(c) unless the moving party can meet the [*Nixon*] requirements[.]" *In re Subpoena Issued to STF Prods., Inc., Producer of Am.'s Most Wanted, Am. Fights Back*, No. 06-10591, 2006 WL 3697679, at *1 (9th Cir. Dec. 15, 2006).

2. <u>Jefferson's Subpoena Fails to Meet *Nixon*'s Specificity Requirement</u>

Assuming without deciding that the Lummi Nation's and its police department's sovereign immunity does not bar the subpoena, *see United States v. James*, 980 F.2d 1314, 1320 (9th Cir. 1992), all of the subpoena's remaining requests[1] fail *Nixon*'s specificity requirement. *Nixon* requires that the documents sought be specifically identified because "Rule 17(c) was not intended as a discovery device, or to 'allow a blind fishing expedition seeking unknown evidence.'" *Reed*, 726 F.2d at 577 (quoting *MacKey*, 647 F.2d at 901).

*United States v. Reyes* illustrates both ends of the specificity spectrum. 239 F.R.D. 591 (N.D. Cal. 2006). There, the defendant, a former chief executive officer of a publicly traded company, served Rule 17(c) subpoenas on two law firms that assisted with the company's internal investigation as well as on a third-party company. *Id.* at 596–97. All three entities moved to quash the respective subpoenas for failure to comply with Rule 17(c). *Id.* at 597. The court found that the subpoenas issued to the two law firms—which referred to specific summaries, notes, memoranda,

---

[1] As noted above, Jefferson withdrew his request for Officer Granger's entire personnel file, which was previously Request 2 in his subpoena.

and reports—satisfied the specificity requirement. *Id.* at 599–600. These requests were "neither improperly broad, nor overly vague; instead, [the defendant] demands access to a discrete set of existing written materials, within the possession of the subpoenaed parties, that pertain to events and conversations that actually occurred and relate to specific subject matter." *Id*. at 599. In contrast, the subpoena issued to the third-party company failed the specificity requirement where the requests sought "all documents" relating to several of the company's policies and practices. *Id*. at 605–06. The court characterized the request as "enormous in scope" and "the quintessential fishing expedition," and noted that the subpoena "adopts a particular theory of defense and then casts a wide net with the goal of reeling in something to support it." *Id.*

Jefferson's second attempt at a Rule 17(c) subpoena once again falls into the latter category, casting a wide net hoping to reel in something useful to his defense theory. He seeks:

1. **All complaints** filed against Officer Granger;

3. **All internal investigation records** related to said complaints/incidents;

4. **All disciplinary findings** against Officer Granger, **including, but not limited to,** sustained charges, recommendations for discipline, recommendations for supervisory intervention, and all "Investigation Summary Reports" and "Investigation Summary Reports" related to complaints and/or allegations of misconduct, and all subsequent reports; and

5. **Any correspondence** between parties regarding these complaints/incidents, **including, but not limited to,** correspondence between Officer Granger's trainers, watch commanders, precinct commanders, and Bellingham Police Department's oversight committee/professional accountability department.

Dkt. No. 226-1 at 3.

Not a single one of these requests is sufficiently specific; Rule 17(c) does not allow broad demands for "all" documents of a certain type premised on the suspicion that a subset of relevant and admissible documents might exist. *See United States v. Zavala-Tapia*, No. CR. 2:09-297 WBS, 2010 WL 5330506, at *1 (E.D. Cal. Dec. 20, 2010) ("A subpoena signals a fishing expedition when it calls for 'any materials' regarding a particular subject and 'any other information' and

defines 'material information' as 'including' but 'not limited to' the described information." (cleaned up)); *United States v. Johnson*, No. CR 94-0048 SBA, 2008 WL 62281, at *4 (N.D. Cal. Jan. 4, 2008) (holding that a subpoena did not satisfy the specificity requirement because "the defendant does not know if there are any complaints against the arresting officers, he is merely seeking them in the event they do exist").

For these reasons, the Court grants the Government's motion to quash.

**B.     Only a Narrow Portion of the Materials Submitted for *In Camera* Review Are Discoverable as *Giglio* Material; the Remainder Are Not**

Next, the Court turns to the materials the Government submitted for in camera review. The Government seeks the Court's review of potential *Giglio* material.

1. <u>Legal Standard</u>

A defendant has the right to the production of exculpatory evidence in the government's possession. *Brady v. Maryland*, 373 U.S. 83, 87 (1963). That right requires the government to turn over any information about its witnesses that would cast doubt upon their credibility. *See Giglio v. United States*, 405 U.S. 150, 154 (1972). And when a defendant makes a demand for the production of the personnel files of testifying officers, the Government is obligated to examine the files to assess their materiality. *United States v. Henthorn*, 931 F.2d 29, 31 (9th Cir. 1991).

Material information includes "evidence that might tend to impeach a government witness," *United States v. Price*, 566 F.3d 900, 903 (9th Cir. 2009), and information that "could cast doubt upon their credibility," *United States v. Jennings*, 960 F.2d 1488, 1490 (9th Cir. 1992). *See also Milke v. Ryan*, 711 F.3d 998, 1006 (requiring disclosure of a testifying officer's personnel file that documented a five-day suspension for dishonest conduct). "If the prosecution is uncertain about the materiality of the information within its possession, it may submit the information to the

trial court for an in camera inspection and evaluation." *United States v. Cadet*, 727 F.2d 1453, 1467–68 (9th Cir. 1984) (cleaned up).

    2. <u>Only a Small Portion of the *In Camera* Materials Are Discoverable Under *Giglio*</u>

  The Government has submitted certain materials for the Court's *in camera* review. It asserts that it "does not believe any of this information is discoverable," but provides no argument regarding why the various pieces of information contained in the 22-page document are not discoverable under *Giglio*. Dkt. No. 238 at 1. Absent supporting argument, the Court warns that it may summarily deny such motions in the future. In any case, having reviewed the material submitted *in camera*, the Court finds that only a small portion of it is *Giglio* material.

  Specifically, the Court finds that the instance of Officer Granger falsifying mileage in 2017 is discoverable under *Giglio* because it is probative of his character for truthfulness or untruthfulness, as would be required to impeach him with extrinsic evidence under Federal Rule of Evidence 608(b). *See In Camera* Materials at PDF page 12. This prior instance of dishonesty is not so temporally remote to deprive it of its probative value. *See United States v. Aguilar*, No. CR 21-0670 JB, 2024 WL 3992286, at *10 (D.N.M. Aug. 29, 2024) ("[T]he longer ago the dishonest act, the less it is informative regarding present-day trial credibility[.]").

  The Court has reviewed the remaining portions of the materials submitted for *in camera* review and does not find that any of it is the type of material, impeachment evidence that Jefferson is entitled to under *Giglio*.

### III. CONCLUSION

  For the reasons explained above, the Court GRANTS the Government's Motion to Quash. Dkt. No. 226.

  With respect to the Motion for Ex Parte Review, Dkt. No. 238, the Court ORDERS the Government to disclose to Jefferson the discoverable portion of the *in camera* materials described

ORDER ON GOVERNMENT'S MOTION TO QUASH TRIAL SUBPOENA AND MOTION FOR EX PARTE REVIEW - 7

above by January 13, 2025 at 1:00 pm. The remainder of the materials are not discoverable. The Court will file a full copy of the *in camera* materials to the docket under seal to facilitate appellate review.

Dated this 12th day of January, 2025.

Lauren King
United States District Judge